JOHN OUIMIT *v.* SAMUEL HENSHAW AND THOMAS THATCHER.

*Duties and Liabilities of Railway Managers in respect to Baggage of Passengers. Common Carriers. Warehousemen. Custom. Baggage.*

A passenger, arriving with baggage by cars at a railroad station, is justified in regarding the man who handles and takes charge of the baggage on the arrival of the train, as the agent of the railroad company which has brought the passenger there, and notice to such man while he is handling the baggage, in regard to its destination, is notice to such company.

It is the duty of a railroad company in regard to the baggage of a passenger, which has reached its final destination, to have the baggage ready, upon its arrival, for delivery, upon the platform at the usual place of delivery, until the owner can, in the use of due diligence, call for and receive it; and it is the owner's duty to call for and remove it within a reasonable time. If he does not so call for it, then the company must put it in their baggage room and keep it for him, and their custody of it then is only that of warehousemen.

As regards the liability of a railroad company, as a common carrier, for baggage after its arrival at its final destination, the reasonable time, within which the owner must apply for it, is directly after its arrival, making due allowance for the delay necessarily occasioned by the crowd on the platform.

The lateness of the hour of arrival does not excuse the passenger from the duty of forthwith claiming his baggage, provided it is placed on the platform and ready for delivery, so that he can receive it.

Where railway passenger trains arrive at a late hour of the night and stop for a few hours, and it is the usual course of the company upon whose train baggage arrives, upon being informed that it is going on in the morning by the next train over a connecting road, to put it in their baggage room, and keep it for delivery in the morning to the servants of the other road, when called for by the owner, and requested to do so, their custody of the baggage during the night is that of carriers, and not of warehousemen.

The course of business and the practice of a railroad company in respect to the custody of baggage passing over its line, and to be transferred to a connecting road, is of great importance in determining the nature of its liability therefor.

Whether a bed, pillows, bolster and bedquilts, belonging to a poor man, who is moving with his family, carried along with him in a railroad train, and packed in his trunk or box containing his clothing, are *baggage* or not, is a

question to be decided by the jury, taking into consideration the particular circumstances of the case, and the use, quality, value and kind of the articles in question.

CASE against the defendants as common carriers over the railroad known as the Rutland and Burlington railroad, for the loss of a box, containing divers articles of personal property belonging to the plaintiff, which, as the plaintiff alleged, was delivered to the defendants to carry, as his baggage, from Burlington to Rutland, on the 1th March, 1859. Plea, not guilty, and trial by jury at the June Term, 1860, KELLOGG, J., presiding.

On trial, it was admitted by the defendants that, at the time of the alleged delivery and loss, they were, as trustees under the second mortgage of the Rutland and Burlington railroad, in possession of such railroad, and were running or operating the same as carriers of passengers and freight for hire.

The plaintiff, in support of his action, testified in substance :— that on the 15th March, 1859, he, with his wife, left Canada to come to East Dorset, Vermont ; that he brought with him from Canada a box between three feet and three and one-half feet long, two and one-half feet high, and twenty-two inches wide, as his baggage, containing the articles described in his declaration ; that in addition to various articles admitted by the defendants to be baggage, this box contained a feather bed, some pillows, a bolster and some bedquilts which belonged to the plaintiff and had been used in his family, and which, as he was changing his place of residence from Canada to East Dorset, he carried with him on this occasion ; that he arrived at Burlington in the evening of March 15th by cars, and there saw his box taken off from the cars of the train on which he came, and placed on the platform at the place where the cars stopped, and that he went into an office and there purchased tickets for the passage of himself and his wife in the cars over the railroad from Burlington to Rutland ; that at Burlington a man put his box on the cars for Rutland, who was at work on the platform where the cars for Rutland started from, handling other boxes and trunks, and loading them on to the cars of the train for Rutland ; and that when the man loaded the box on the cars for Rutland, he asked

Ouimit *v.* Henshaw et al.

the plaintiff where he, the plaintiff, was going to, and the plaintiff replied that he was going to Rutland, and the man then took a piece of white chalk and marked the end of the box with it, and the box was put on the cars for Rutland, and the plaintiff and his wife came from Burlington to Rutland in the cars of the same train, and arrived at Rutland about half-past 11 o'clock in the same night ; that, on arriving at Rutland, he, the plaintiff, got out of the cars on to the platform in the railroad depot at that place, and there saw his box taken out of the baggage car and put on the platform, and saw the man who handled and took charge of the baggage there, take the box and put it with other boxes and trunks on to a wheelbarrow ; that he asked the same man at what time the cars would go to East Dorset in the morning, and was told by him that they would start at half-past five o'clock ; and that he then asked the same man if his box would be safe until morning, and was informed by him in reply that it would be safe ; and that he saw the same man start with the wheelbarrow, on which his box was placed, and go to a room at the corner of the depot, and put it in there, and supposed that he locked up the room ; that early the next morning, and before the time of the starting of the cars from Rutland to East Dorset, he, the plaintiff, called on the same man for the box, and both went into the same room where it was put the night before, but it could not be found, and that the man said that he guessed he had sent the box on the four o'clock train which went from Rutland to the eastward on that morning, along with a party of French people who came with the plaintiff from Burlington to Rutland, and were going to Worcester, Massachusetts ; and that the plaintiff has never since found his box, or been able to obtain any information about it.

It appeared that the plaintiff purchased his ticket at Burlington for a passage on the regular passenger train from that place to Rutland, and that such passenger trains did not take freight, but only transported passengers with their baggage ; and, also, that the plaintiff was intending to go to East Dorset, a station on the line of the Western Vermont railroad, the line of which connects with the line of the Rutland and Burlington railroad, at Rutland, and that he did not intend to go any further than Rut-

Ouimit *v.* Henshaw et al.

land on the Rutland and Burlington railroad, and that the said two last named railroads were under separate and distinct management, and no evidence was given tending to show that there was any business connection between them.

The plaintiff also testified in regard to the articles contained in his box, and their value ; and also introduced the testimony of other witnesses tending to support and sustain his own testimony as above mentioned.

The defendants' counsel claimed, and requested the court to rule, as a conclusion of law on the evidence on the part of the plaintiff, as above detailed, that as Rutland was the place which the plaintiff had indicated and directed as the place of the destination of the box when it was received on the cars at Burlington, and as the box was carried on the cars from Burlington to Rutland, and was taken from the cars and deposited on the platform in the depot at Rutland, and there seen by the plaintiff, the defendants were under no further liability for the box and its contents as common carriers, and that the evidence on the part of the plaintiff was not sufficient, *prima facie*, to establish a cause of action against the defendants under the declaration in this case ; but the court declined so to rule. To the refusal of the court so to rule the defendants excepted.

The defendants then introduced testimony tending to show that the plaintiff's box was never delivered to them, or received on their cars at Burlington, or any other place, and that, if lost at all, it was probably lost at Burlington, or before it reached that place.

The defendants' counsel requested the court to charge the jury that, in case they should find that the defendants were liable for the baggage of the plaintiff, that liability would not extend to articles of furniture, or to such articles as feather beds, bed quilts, pillows and bolsters, which were included in the contents of said box, as claimed by the plaintiff in his declaration. The court declined so to charge the jury as requested.

Among other things not excepted to, the court charged the jury that the carrying of the baggage of passengers is included in the principal contract for his own conveyance, and the carrier is to be held responsible for the loss of the baggage, although

there was no separate contract concerning it.; that if the jury should find from the evidence that the plaintiff purchased tickets at the office of the defendants in Burlington, for the fare of himself and his wife in the cars over the railroad from Burlington to Rutland, and informed the servant of the defendants at the station at Burlington, whose business it was to take charge of the baggage delivered there for conveyance on the cars of the defendants, that he was going to Rutland, and delivered to him the box, described in the declaration, to be forwarded to Rutland as his baggage, and the said box was received and put on the cars as his baggage, to be carried to Rutland, as the testimony of the plaintiff tended to show, in that case the defendants are to be considered as taking upon themselves the obligation not only to transport the box to Rutland, but also to deliver the same to the plaintiff, at the usual place of delivery at that station, if called for by him within a reasonable time after the termination of the journey ; but that if the box was not called for by the plaintiff within a reasonable time after its arrival at Rutland, the liability of the defendants for it, in the character of common carriers, would cease, and they would, thenceforth, hold it as mere gratuitous bailees or keepers in deposit, and, for its loss in that case, the plaintiff would not be entitled to recover against the defendants in this action ; that the depositing of the box on the platform in the depot at Rutland, on its arrival at that station, coupled with the fact that it was seen there by the plaintiff, and that the plaintiff might then have called for and taken the charge and control of it, would not be such a delivery of the box to the plaintiff as was necessary to the complete performance of the duty of the defendants as common carriers in respect to the same, if the defendants or their servants retained any custody or control of it : and that it was necessary, in order to have completed such a delivery that the defendants, or their servants having the charge of the box, should have parted with the control and custody of it, and transferred its actual possession to the plaintiff; and that the question whether the box was called for by the plaintiff within a reasonable time after his arrival at Rutland, was one of fact, to be determined by the jury, on a consideration

of the testimony given in the case bearing on that point; that the defendants, as common carriers, were liable for only such articles, contained in the box, as were articles of reasonable and ordinary baggage, such as were articles of necessity or convenience, for personal use, and such persons traveling usually carry with them; that, although in a given case it might be a mixed question of law and fact, as to what should be deemed articles of baggage, as distinguished from articles of merchandize, yet there was no definite rule of law which the court could lay down, by which the character of any particular article, in this respect could be defined or determined with precision or certainty, as the same article might properly be treated at one time as baggage, and at another as merchandize, and the decision of the question, whether baggage or merchandize, might depend on, and vary with, the particular circumstances of each case; that whether any particular article should be considered as baggage, or as merchandize, might be unimportant, if it was received as baggage, and there was no attempt to conceal its character, and nothing in its bulk or value which would be objectionable as imposing on the carrier an increased measure of responsibility or care; that, under particular circumstances, a bed might be deemed a proper article of baggage; and that, in regard to the articles mentioned in the plaintiff's declaration, and claimed by him as articles of baggage, it was a question for the jury to decide as to what were, or were not proper articles of baggage, under the particular circumstances of the case as established by the testimony, and that, in determining this question, the jury should consider the uses, quality, value and kind of articles which were claimed as baggage, and their connection with the ordinary purposes of traveling.

The defendants excepted to the refusal of the court to charge the jury as they had requested, and also to the charge given by the court to the jury, in the particulars above mentioned.

The jury returned a verdict in favor of the plaintiff for $66,31 cents damages.

*E. J. Phelps*, for the defendants.

*A. L.* and *H. E. Miner*, for the plaintiff.

Ouimit *v.* Henshaw et al.

ALDIS, J. The action is case against the defendants, as car-riers. There is no count against them for negligence as ware-housemen.

The plaintiff was going by railway from Burlington to East Dorset. From Burlington to Rutland he would go by the Rut-land and Burlington Railroad, (the defendant's company ;) from Rutland to East Dorset, by the Western Vermont Railroad. It does not appear that these roads formed a continuous and con-nected line. The plaintiff had his box marked for Rutland, and paid for his passage only to Rutland. He arrived at Rutland at half past eleven at night. His box was put upon the platform, and the man who handled and took charge of the baggage there, put the box, with other boxes and trunks, on a wheelbarrow. The plaintiff asked the man, at what hour the cars would go to East Dorset in the morning. He replied,—" at half-past five o'clock." The plaintiff then asked the man if his box would be safe till morning. The reply was,—" it would be safe." The man then started with the wheelbarrow, and went to a baggage room in the depot, into which he put the box, and other baggage, and locked up the room. In the morning, at about five o'clock, the plaintiff called for his box, and it could not be found ; the baggage master saying that it had probably been taken on the four o'clock train that had left Rutland that morning for Bellows Falls.

I. We think the plaintiff had the right to regard " the man who handled and took charge of the baggage," on its arrival at Rutland, as the servant of the Rutland and Burlington Railroad Company, and acting in the discharge of his proper duties. The conversation between the plaintiff and " the man," (whom he had the right to regard as the baggage master of the station,) gave the latter reasonable notice that the box was going on to East Dorset by the next train on the Western Vermont railroad. The inquiries were such as travellers desiring to go further usually make, and which the baggage master must have fully understood, without any more formal or explicit statement. Having the charge of the baggage at this point, notice to him in regard to its destina-tion was notice to the company, because it was a notice to him

of a matter within the proper sphere of his duties as their servant.' He could have required the plaintiff to take the delivery of it. He could have told him that he must find the servants of the Western Vermont Railroad Company, and deliver the box to them. Instead of so doing, he, voluntarily, and with the knowledge that the box was to go on by the next Western Vermont train, took the control and custody of the box himself, and put it in the defendant's baggage room. His act, whatever is the legal effect of it, must be regarded as the act of the Rutland and Burlington Railroad Company; *Jordan* v. *The Fall River Railroad Company*, 5 Cush. 69; Redfield on Railways, p. 243.

2. The defendants insisted and requested the court to charge the jury, that the putting of the box on the platform at Rutland, ready for delivery, where it was seen by the plaintiff,. and might have been taken by him, was a complete performance of their duty as carriers; and that if the baggage master thereupon retained the custody of it, with the consent of the owner, and put it into the baggage room of the depot for safe keeping till morning, the company were only liable as warehousemen for such keeping till morning.

The court charged, first, that it was the duty of the company to carry the box to Rutland, (its destination,) and there deliver it to the plaintiff, if called for by him within a reasonable time after the termination of the journey; but if it was not called for within a reasonable time after its arrival, the liability of the defendants as *carriers* would cease; and thereafter they would only be liable as bailees, and not as carriers; and that the question whether the box was called for within a reasonable time was one of fact, to be determined by the jury upon the testimony : secondly, that the depositing the box on the platform in the depot at Rutland, and its being seen there by the plaintiff, who might then have called for and taken it, was not a delivery, nor the complete performance of the defendants' duty as carriers, so long as the defendants or their servants retained any custody of it; and that in order to have completed a delivery, the defendants' servants should have parted with all custody of the box, and transferred its actual possession to the plaintiff.

This is all of the charge upon the point whether the facts shown would discharge the defendants from their liability as carriers.

The important question in this case is, whether the delivery of the box upon the platform of the depot at Rutland, (which was its place of destination,) in the sight of the plaintiff, at half past eleven at night, and its removal by the defendants to their baggage room for keeping through the night, they being informed that it was going over the Western Vermont road to East Dorset by the first train in the morning, the plaintiff inquiring if it would be safe there, and they assuring him that it would,— whether these facts release the defendants from liability as carriers for the box during the night, and make them liable only as warehousemen ?

This case is of but slight pecuniary importance, but the question involved is of much importance to the public and the railway companies ; and fully justifies the defendants in the diligence and research which they have bestowed upon its investigation, and in their desire to have its decision establish the rule in regard to similar cases.

It is admitted that the plaintiff bought a ticket at Burlington for Rutland, and had his box marked for Rutland, and that in going to his final destination of East Dorset, he could go no further than Rutland on the Rutland and Burlington Railroad. He did not even tell the station agent at Burlington who marked his box that either he or it was going further than Rutland. Rutland therefore was, so far as the defendants could know, his final destination, until he arrived there.

When he arrived there his box was placed upon the platform, at the usual place of delivery, ready for delivery to him. He saw the box, and could have demanded that its custody should be given up to him. He did not demand it. The baggage master did not offer to deliver it up to him, or require or request him to take it.

Now upon these facts standing alone, and without reference to what further was said and done about going on in the morning to East Dorset, let us consider what would be the rule of law, as to delivery and future custody by the railroad company.

We think it is the true rule of the law as to baggage that has reached its final destination, that the railroad company must, upon its arrival, have it ready for delivery upon the platform at the usual place of delivery, until the owner can, in the use of due diligence, call for and receive it; and that the owner must call for it within a reasonable time, and must use diligence in calling for and removing it. If the owner does not within a reasonable time, and in the exercise of diligence, call for the baggage, then the company should put it in their baggage room and keep it for him, and their custody of it then is only that of warehousemen; and they are discharged from liability as carriers as soon as they have kept it ready for delivery a reasonable time, and it has not been called for. Where trains arrive at such hours that it is the usual course of business at the station to immediately deliver the baggage, and for passengers to immediately receive it, there the reasonable time for which the company should have it ready for delivery, must be limited and governed by the practice and custom of immediate delivery; and in such cases reasonable time and immediate delivery go hand in hand, and " reasonable time " can not extend the delivery to another day or another occasion. We believe it to be the usual custom to deliver and receive baggage not only during what is called the business hours of the day, but upon the arrival of trains in the night, and at almost any hour of the night. The traveller is rarely willing, after arriving at his destination, to leave his baggage at a railroad depot, and the railway companies are usually desirous to despatch business, and be relieved from their responsibility. Hence immediate delivery is the rule as to baggage; and the rule that has been applied to the receipt of freight, that it should arrive during the usual hours of business, and so that the consignee may have an opportunity during the hours of business to see and receive it, does not apply to baggage, which usually accompanies the traveller, and is required by him on arrival.

The rule is thus expressed by Mr. ANGELL, in his work on the law of carriers, sec. 114 : " The arrival with the baggage in safety at the place of destination, will not discharge the carrier until its delivery to the owner; although, unless demanded in a

reasonable time, the liability of the carrier, in his strict charac-ter of a common carrier, will not continue. No passenger is required, however, to expose his person in a crowd, or endanger his safety in the attempt to designate and claim his baggage."

In Pierce on Railroad Law, p. 499, it is said : " the liability of the company as a common carrier ceases when the passenger has had a reasonable opportunity after the arrival to receive his baggage ; if it remains in its custody after that, the company will be liable only as bailee for hire or gratuitously, according to circumstances."

Redfield on Railways, speaking of the liability of railroad companies for the baggage of travellers, says : " they remain liable until a full and unequivocal re-delivery to the owner, and ordinarily to the end of the route ;" and in a note, citing *Powell* v. *Myers*, says : " if baggage be not called for in a reasonable time, the liability of the company as carriers ceases, and they are holden only for ordinary care as bailees for hire."

The case of *The Norway Plains Company* v. *The B. & M. R. Co.*, 1 Gray 293, has been cited as an authority of great weight to establish the doctrine that delivery of goods, and, by analogy, of baggage, upon the platform, discharges the railway compa-nies from liability as carriers. The point upon which that decis-ion has since been much questioned, that even where the owner of the goods has no opportunity to receive them, in the exercise of all reasonable diligence, the company is only liable as bailee for hire, does not seem to arise in this case, for here the owner had the opportunity to remove his baggage. And we incline to think the learned court of Massachusetts, in applying the doc-trine of that case to the baggage of travellers, would hardly say, that, if the passenger, on the arrival of the train, on the spot and at the time used due dilligence to get his baggage, and it was lost or stolen while on the platform and before he could get it, the company would not be liable as carriers.

If the doctrine of that case were to be pressed so far as to claim, that, if the railroad companies, for their own convenience and the dispatch of business, put the baggage of travellers into their baggage-room, and there kept it till it was convenient for

them to deliver it, they would not be liable as carriers, we should feel obliged to differ from such a rule.

It is the very point upon which the decision is open to criticism, upon which the supreme court of New Hampshire, in a more recent case, (32 N. H. 523,) upon the same facts, has decided directly to the contrary, and in which it is distinguishable from the cases in the 8 Taunton and the 4 T. R. 581, which are cited to sustain it. Those cases stand upon the ground that, after the goods have reached their destination, and when the carrier holds them for the benefit of, or upon an agreement with, the owner, or after a reasonable time for delivery has expired, or for the convenience of the owner, there the custody is as bailee, and not as carrier.

The rule of law, as to the liability of carriers for the baggage of travellers which has reached its destination, we have already stated ; and we are satisfied that the reports, as well as the text of elementary writers, will fully sustain the rule as here expressed. We think, therefore, that as the plaintiff's box was ready for delivery on the platform, and he might have received it and had it removed to a hotel, the lateness of the hour at which the train arrived will not of itself extend the reasonable time within which the plaintiff should call for it to the next morning, so that, it not being called for, the defendants became liable for its custody as carriers. If it was not the usual course of business for the defendants to deliver baggage immediately on the arrival of the train at that late hour of night, or if the railroad company detained the plaintiff's baggage for their own convenience upon the arrival of that train, such facts should have been shown by the plaintiff ; and if shown, might vary the defendant's liability for the custody of the property. But we can not presume such facts to exist, and without them the case must stand upon the usual custom of business, and the ordinary rules of law applicable to such state of facts.

Thus far we have considered the case upon the basis that Rutland was the final destination, and nothing further said or done between the parties.

But the case shows that the plaintiff informed the baggage

master that the box was going on in the morning by the Western Vermont road to East Dorset, and that the baggage master, with such knowledge, took the box to the baggage room, the plaintiff consenting, or rather not objecting.

It does not appear that the Rutland and Burlington and the Western Vermont roads formed a continuous line, or were connected in business—both, however, using and starting from the same depot.

The question then arises, whether, when baggage arrives at its destination upon one railroad, and is then to be transferred to the other road that connects with it at that point, and the former road on the arrival of the train has knowledge of the fact that such baggage is to go on by the next train in the morning, over the other road, and with this knowledge stores the baggage in its baggage room till morning,—the owner not objecting,—is the custody of the baggage during the night that of carrier or warehouseman ?

This we think must depend upon what is the usual course of business—the usual practice of the company as to the delivery of baggage that is going on over another road.

Where two connecting roads meet, and their trains start from the same station or depot, and the traveller and his baggage are going directly on, the baggage merely to be removed from the car in which it has been brought to another on the connecting road, there by necessity new duties spring up. The traveller is in no situation to receive his baggage and to deliver it to the other road. He may be, and generally is, ignorant of the places where the trains are placed, and of the means of transfer for his baggage. He is not unfrequently surrounded by a crowd as ignorant as himself; is confused by the presence of several trains and by what appears to him like the disorderly movements of engines, cars and baggage, and from the delays incident to such crowds and places is often hurried for time to get his ticket and his seat. He can not substitute his own care and custody of his baggage for that of the railroad company. To attempt it would be but to produce delay and confusion, and an intermeddling which the railroad companies could not endure. Hence at such junctions of connecting roads the railroad companies frequently,

perhaps we may say usually, provide persons to transfer the baggage from one road to another. If the baggage of the traveller is not marked or checked for any point beyond such junction, all they expect of him is that he shall point out his baggage and state the road over which it is to go, and be present when it is delivered to such road to direct at what station it is to be left, that it may be properly checked or marked. The companies assume the control and custody of it in transferring it from one road to another—the servants of the first company delivering it to the servants of the other. Where it thus becomes the usual course for the first company to deliver baggage going on over another road to the servants of such other road, it is obvious that the custody of the first as carriers continues till the custody of the second begins. The traveller has the right to rely on this usual course of transferring and delivering baggage, and can require the delivery of his baggage according to such usual practice. It is the place where he is the most helpless, and where baggage is the most likely to be lost or stolen—where fraud, collusion and theft are the most easily practised. On the other hand, it is indispensable for the convenience of such connecting roads, for the prevention of confusion and delay and for the dispatch of business, that they should assume such custody and transfer of baggage, and in such custody the security of the public requires that they should be held as carriers.

So if the second train does not directly connect and leave on the arrival of the first, and there is a detention at the station for a short period of time or even for a few hours, the custody of the railroad company thus assumed must be held to continue till the expected train departs, or the servants of the second company take the delivery of the baggage; the usual course of business determining their liabilities in this respect. Nor ought the relation of carrier to be changed by either company's putting the baggage into a store-room for safety while waiting for the departure of the next train.

So where trains arrive at a late hour of the night and stop for a few hours, and it is the usual course of the company upon whose train baggage arrives, upon being informed that it is going on in the morning by the next train over a connecting

Ouimit *v.* Henshaw et al.

road, to put it in their baggage room and keep it for delivery in the morning to the servants of the other road when called for by the owner and requested to do so, then their usual practice as to the delivery of such baggage should govern, and the custody during the night should be that of carrier and not warehousemen. The traveller has the right to call for such delivery in the morning according to the usual practice. The danger of collusive theft from the baggage-room during the night is as great as at any point of the carriage ; the traveller relying on such practice has no custody of his property and cannot substitute his own watchfulness for that of the company ; and the latter by adopting the practice lead the public to rely on their vigilance and care. That the course of business—the practice of the carrier—is a most important element in determining when the transit ends, will appear from an examination of the leading case of *The F. & M. Bank* v. *The Champlain Transportation Co.*, 23 Vt. 211. Judge REDFIELD in delivering the opinion of the court says :— " All the cases almost without exception regard the question of time and place when the duty of the carrier ends, as one of contract to be determined by the jury from a consideration of all that was said by either party at the time of the delivery of the parcels to the carrier ; the course of the business, the practice of the carrier and all other attending c'rcumstances." To hold that delivery by railroad companies of baggage on the platform is delivery to the owner, and by an absolute and inflexible rule of law terminates the transit and discharges the carrier as such from further responsibility—irrespective of their own practice and course of business as to delivery—would we think be in conflict with the principle of the decision in the case last alluded to.

The case of *Powell* v. *Myers*, 26 Wend. 591, is in many respects similar to the case at bar and is so much in point—especially as showing that the course of business as to the delivery of baggage may justly be relied on by the traveller—that we deem it proper to refer to it with some particularity.

The plaintiff's trunk was put on board the defendants steamboat at West Point for New York, where it arrived between nine and ten at night. Passengers occasionally staid on board

during the night, but usually left the boat on arriving at the city. Shortly before arriving at the dock the plaintiff asked the master of the boat if his baggage would be safe on board the boat during the night. The master replied that it would be perfectly safe, for they stationed a watch for its protection till morning. The plaintiff left his baggage on the boat but went off to the city himself. During the night a negro with a forged order came for the baggage and obtained it. Chancellor Walworth in delivering the opinion says :—" The jury were right in concluding that the baggage left on board was in the custody of the master, in his capacity of common carrier, until it was called for at the usual time in the morning after its arrival at its place of destination." And Verplanck, Senator, says : " The passenger's trunk left in the boat till a convenient and usual time of delivery is governed by the same law with the merchandise transported in the boat. Mere arrival does not discharge the carrier's responsibility as to either."

The English decisions recognize the same doctrine. Thus where there is a usage for the porters of the company to put the baggage on a cab or a hackney coach, there it is held there is no delivery to the traveller till that is done, though the porter take the baggage from the hands of the traveller, while standing on the platform, to put upon the cab.

*Richards* v. *The L. & S. C. R. Co*, 7 C. B. (62 E. C. L.) 839 ; *Butcher* v. *The L. & S. W. R. Co.*, 29 Eng. L. & E. 347 ; *Bromley* v. *The Midland R. Co.*, 33 Eng. L. & E. 235.

The court did not put the case on this ground, which upon the evidence it might perhaps have been. The law of the charge is right, but is inapplicable to the case. Upon that charge we cannot tell upon what ground the jury may have held that the box was called for in a reasonable time. It might have been merely because it arrived at a late hour.

The court should have charged as to the law as applicable to baggage going on over the Western Vermont road and deliverable according to the course of business of the defendants and kept by them for such delivery.

It is denied that in the case at bar there was evidence to show, that it was the usual course of the defendants, on being informed

at night that baggage was going on over the Western Vermont road, to deposit it in their store-room and there keep it over night for delivery in the morning, when the owner should call for it, to the servants of the other company ; and that the court in their charge in substance directed the jury that if they found these facts then the defendants would be liable as carriers. But we think we could not be justified in so construing the charge. The part of the charge which speaks of the reasonable time within which baggage should be called for, would have to be extended by implication quite beyond what jurymen would have under-stood from it in order to embrace this idea.

It is said also that the conduct and language of the baggage master gave the plaintiff to understand that it was the practice of the company to keep such baggage over night for delivery in the morning to the Western Vermont road when called for by the owner, and that in this respect the case falls within the decision of *Powell* v. *Myers.* Unquestionably, if a servant of the company acting within his duties—the baggage master for in-stance—had assured the plaintiff that it was their custom to keep baggage for delivery, when called for, to the other com-pany in the morning, such an assurance would bind the company, if the plaintiff had relied upon it and left it with them upon such assurance. But nothing of this kind was stated in the charge to the jury, nor can we know what would have been their finding on the point ; nor whether they would have held what the bag-gage master said and did, as amounting to a declaration of their practice upon which the plaintiff would have been justified in relying.

The court seems to have treated the case as that of baggage which had reached its destination, and upon that basis to have left it for the jury to say whether it was called for within a rea-sonable time, when in fact the plaintiff was present, saw his baggage, had an opportunity to take it into his own custody, and could with due diligence have removed it. This we think was error. The other branch of the case now sought to be estab-lished, that the baggage was going on in the next train over the Western Vermont road ; that the defendants knew it ; that it was their custom to put such baggage in their baggage-room and

Ouimit *v.* Henshaw et al.

keep it till morning for delivery to the servants of the Western Vermont road when called for by the owner; and also that the conduct and language of the servant of the defendants led the plaintiff to understand that there was such a custom, and to rely on it even if there was not—does not appear to have been suggested to the jury as furnishing a reasonable ground for holding the defendants liable as carriers for its delivery in the morning.

If such a course of business as to the custody and delivery of such baggage had been shown, the plaintiff would have been entitled, by giving the company such notice, to require of them to deliver the baggage in the morning to the Western Vermont road pursuant to such custom when called for. If he did not call for it in the morning at the usual hour for the delivery of such baggage, then their custody as carriers would cease and thenceforth they would only be bailees for him.

II. A bed, pillows, bolster and bedquilts belonging to a poor man, who is moving with his wife and family, may properly be called ·baggage. It is very common for such persons to take such articles with them as baggage—their poverty makes it necessary, and such things are frequently about all they have that would make baggage. They are not merchandise—are of small value—may be put in a box or trunk like apparel—are frequently of immediate and necessary personal use to the owners, and both from custom, and from a regard to the poverty of such travellers, are often and properly treated as baggage. If the tools of a mechanic (14 Penn. 129), or articles of amusement such as a gun, a pistol and fishing tackle, or of instruction as books (6 Hill 590), or a lady's jewelry, are properly baggage because they are usually carried as such, we think the articles here in question may both by reason and custom be included in the same list. The case on this point was we think put to the jury with proper instructions.

Judgment reversed.