H. E. LEWIS, ASSIGNEE OF HENRY L. SAMSON AND EDWARD J. SAMSON, BANKRUPTS, *v.* FRED PARKS.

*Book Account. Auditor. Payment.*

Goods were delivered to the defendant from the store of parties who claimed to be partners, and carried on business under a firm name, and were charged to the defendant on the books of the concern. Said goods were in fact, though unknown to the defendant, the property of one of said parties, against whom the defendant then had an account individually. The assignee in bankrutcy of said parties, who were adjudged bankrupts as partners, subsequently brought book account against the defendant for said goods. *Held*, that the defendant's account against the owner of said goods individually, was proper matter of adjustment in said action.

The supreme court will not revise the findings of an auditor, if there is any evidence tending to support them.

Shortly before said goods were delivered to the defendant, the owner thereof told the other party to settle the account between himself and the defendant, and pay the defendant the balance; which said party consented to do. When the defendant received said goods, he understood, and, as a prudent man, had good reason to understand, that they were to apply on his account against the one owning them, although the other party, who delivered them, did not so understand. *Held*, that the delivery of the goods under such circumstances, although they might have been the property of both of said parties, operated as payment of the defendant's said account, and never created an indebtedness in favor of both of said parties.

BOOK ACCOUNT. The plaintiff's account was for goods and merchandise sold and delivered on the 10th of April, 1871. The

first item of the defendant's account was for butter delivered on October 20, 1868. The auditor reported the following facts :

" In January, 1868, Henry L. Samson, one of said bankrupts, was carrying on a confectionery or candy store in St. Albans, under the name of Henry L. Samson & Co., of which business he was the sole owner. Said business was, in part at least, managed by Edward J. Samson, the other bankrupt, and until some time in August, 1869, the said Edward was only a clerk for said Henry, working for a yearly salary, and had no interest in the business. The said Henry was at the same time engaged in other business not connected with said candy store. On July 27, 1868, defendant bought at said store a bill of goods amounting to $22.75, and on Oct. 12, following, another bill amounting to $41.75, which sums were regularly charged to the defendant on the books of said store, which were then kept in the name of H. L. Samson & Co. I find that these items were properly charged to the defendant, and that said accounts were the sole property of Henry L. Samson. I further find, that in the same month of October, defendant delivered to said Henry, 259 pounds of butter, worth forty-five cents per pound, to sell and account for the proceeds. Said Henry never rendered to defendant any account of sales of said butter, and I find he was accountable to defendant for its value at the time of delivery, making the sum of $116.55 I find that to this amount there was properly offset the two bills of goods aforesaid, leaving the sum of $52.05 justly due the defendant from Henry L. Samson on the 20th day of October, 1868, on account of the balance of said butter.

" I further find, that in August, 1869, the said Henry and Edward made an arrangement which they called, and supposed to be, a partnership, for carrying on the business of said store ; that they claimed to be partners, and as such did business with various parties at St. Albans under the name of H. L. Samson & Co., until about the first of January, 1871, when they removed their business to Burlington, when they changed their firm name to Samson Brothers, and continued to do business until the following May, when they failed, and went into bankruptcy. I find that the goods charged for in the plaintiff's account, were sold and delivered to defendant from said store in Burlington, and that said sale was part of the business so carried on in the name of Samson Brothers. I find that they were adjudged bankrupts as partners under said firm name, and that said bankrupt proceedings were commenced May 9, 1871. There was no change in the relations of said Samsons after August, 1869, and their business was con-

43

ducted upon the agreement they made at that time. By that agreement, the said Edward was to have, in addition to the same salary he had theretofore received as clerk, a per centage of the profits of the business of said store. There was no evidence before me that they made any provision for dividing between them any losses that might occur in said business, and I find that at that time they did not expect such losses would occur. After making said arrangement in August, 1869, the business of said store was carried on in the same manner it had been before ; the goods acquired after that time were commingled with those on hand at the time ; the accounts were kept in the same books as before ; nothing was put on said books to designate any difference or distinction between the accounts accruing before and after the said arrangement ; and no memorandum was made of the date of said arrangement ; and neither of said parties can now fix that date. There was no evidence that any inventory of the goods or accounts then on hand, was made, nor that any accurate estimate or appraisal of goods or accounts belonging to said Henry L. was ever made, nor that he was ever given credit for the goods and accounts on hand. From the manner of conducting said business as above detailed, and the absence of evidence of inventory and accounting or credit to said Henry L. for the goods and accounts on hand, as well as from the testimony showing the share said Edward was to receive of the profits, I find that at the time of making such arrangement in August, 1869, it was not the intention of the parties to change or transfer the ownership of said goods or accounts from said Henry ; but it was the intention of said parties that said Henry should continue to be the owner of the goods in said store, and was to account to said Edward for the amount of his salary and his share of the profits. There was no direct evidence of this, and the finding is made subject to the opinion of the court whether the facts above detailed have a legal tendency to support the finding. I further find that after the making of the said arrangement, but previous to the delivery of the goods in suit, the defendant, at said store, applied to said Henry for adjustment of the butter account ; that said Henry directed said Edward to allow defendant's claim, settle the old charges of $22.75 and $41.75, and pay defendant the balance. For some reason that was not done on that day ; but I find that said Edward consented to so treat the matter. At the time of the delivery of the goods in suit, no mention of this direction was made by either party. The said goods were sold by the said Edward. The defendant at that time expected the goods so bought would apply on the butter account, but the said Edward did not so understand it at the time.

" The defendant claimed that the evidence showed that said Samsons were not in partnership, and that the balance due for the butter should offset the goods in question. Also, that if they were partners, he still had the right to treat the delivery of said goods as being pursuant to the direction of said Henry to Edward to pay the balance due on the butter. If from the facts found the court decides that the balance due on said butter cannot be allowed in defence of the claim in suit, then I find due the plaintiff the sum $41.04 with interest from the 10th day of April, 1871 ; but if the court decides that the balance due on said butter can be applied in defence of the claim in suit, or that said Samsons were not in partnership, then I find that nothing is due from the defendant to the plaintiff to balance accounts."

The court, at the September term, 1874, ROYCE, J., presiding, rendered judgment for the defendant on the report ; to which the plaintiff excepted.

*Noble & Smith* and *Bryant Hall*, for the plaintiff.

The facts reported show that the bankrupts were partners, not only *inter alios*, but also *inter se*. *Kellogg* v. *Griswold*, 12 Vt. 291 ; *Tyler* v. *Scott*, 45 Vt. 261. The facts do not support the finding of the auditor, that the title to the goods remained in Henry L. Samson, notwithstanding the agreement of August 1869, between him and the said Edward ; but such finding is against the evidence, and cannot stand. It is not necessary that the court should find from the facts reported, that the bankrupts were, strictly speaking, partners *inter se*, in order that their assignee may maintain this action. The plaintiff represents the creditors of the business, who have a right to treat the bankrupts as partners *inter alios*, and whose right to the assets of the firm, to satisfy their debts, is prior to that of an individual creditor of H. L. Sampson. Then again, it is only necessary that the bankrupts should have a joint interest in the account sued for. *Bowman et als.* v. *Bailey*, 10 Vt. 170. The defendant cannot offset a debt due from H. L. Samson, one of the joint creditors, because it is not in the same right as that sought to be recovered. *Adams* v. *Bliss*, 16 Vt. 39 ; *Phelps* v. *Bulkeley*, 20 Vt. 17.

The facts reported show that the goods in question were *sold* to the defendant, and not delivered to him in payment of the butter account.

*H. R. Beardsley*, for the defendant.

From the facts reported, the bankrupts were not partners as between themselves, although they might have been treated as partners by third parties. This position is fully sustained by the following authorities. Collyer Part. 13, *et seq ; Kellogg* v. *Griswold*, 12 Vt. 291 ; *Bruce* v. *Hastings*, 41 Vt. 380 ; *Hawkins* v. *McIntyre*, 45 Vt. 496 ; *Everett* v. *Chapman*, 6 Conn. 347 ; *Loomis* v. *Marshall*, 12 Conn. 69. *Tyler* v. *Scott*, 45 Vt. 261, would seem without examination, to conflict with the foregoing authorities ; but when carefully examined, it will be found that the facts of that case were much stronger to show a partnership, and much weaker to establish the relation of master and servant, than the facts of this case.

The report shows an agreement between the bankrupts and the defendant, that the goods should apply on the ꭒutter account, and that that agreement was relied on by the defendant, although the application was not made at the time. The court will make the application now.

The opinion of the court was delivered by

Ross, J. The plaintiff, by force of the Bankrupt Act, stands in the rights of H. L. Samson and Edward J. Samson. The questions arising in the case are to be determined as they would have been if the suit had been brought in the name of Samson Brothers. If that were only another name under which H. L. Samson was carrying on business, the rights of the assignee against the defendant are the same as though the suit was in the name of H. L. Samson. If the business were the sole business of H. L. Samson, it matters not, so far as the defendant is concerned, under what name the business was conducted. He could not change the rights of the defendant by changing only the name in which he did the business. If the goods for which recovery is sought, were, when delivered, the sole goods of H. L. Samson, the defendant has the same right in adjusting the accounts in this suit that he would have had had the suit been brought by H. L. Samson. The auditor has reported that in August, 1869, when it was arranged that the business should be transacted in the name

of Samson Brothers, " it was not the intention of the parties to change or transfer the ownership of said goods and accounts from said Henry L., but it was the intention of said parties that said Henry L. should continue to be the owner of the goods in said store, and was to account to said Edward J for the amount of his salary and his share of the profits." The facts thus found render Henry L. the debtor of Edward J. for his salary, which consisted of a specific sum and a share in the profits of the business. Edward J. obtained no interest in the goods from the arrangement, and had no more right to hold them for the payment of his salary than any other creditor of Henry L. would have. When the goods named in the plaintiff's specifications were delivered to the defendant, they were the sole goods of Henry L. Samson. When charged upon the books of Samson Brothers, the charge in fact was in favor of Henry L. alone; and in adjusting the accounts, the same rights exist, and the same rules apply, that would exist and apply if the charge and suit were in the name of Henry L. Samson. The plaintiff claims that the evidence did not justify the auditor in finding such facts. This court will not revise the facts found by an auditor, if there was any evidence introduced tending to establish such facts. In this respect, the facts reported by an auditor rest upon the same legal basis as a verdict of a jury. We think from the affirmative evidence in the case, as well as from the absence of evidence of other facts within the knowledge of the plaintiff's bankrupts, and which were material to be shown by the plaintiff if they existed, there was ample evidence tending to establish the facts so reported. If the accounting on the facts reported, is in fact between Henry L. Samson and the defendant, as we think it must be treated, there is no error in the judgment of the county court.

II. The auditor has also found that previously to the delivery of the goods by Edward J., Henry L. Samson had directed him to settle the old account existing between him and the defendant, and to pay the defendant the balance his due, and that Edward J. consented to this direction, though the old account was not closed on that day, and that the defendant understood that he received the goods in question to apply on the old account,

though nothing was then said about such application being made. The auditor has not in terms found that the defendant, as a prudent man, had a right so to understand ; but from the facts reported, we think the legal inference arises, that the defendant, from what had transpired, had good reason, as a prudent person, to understand that he was receiving the goods to apply on the balance due him from Henry L. Samson, with the consent of Edward J. The delivery of the goods, though owned by Samson Brothers, under such circumstances and understanding, operated as a payment on the balance due the defendant from Henry L. Samson, and never created an indebtedness from him to Samson Brothers. Hence, Samson Brother would have no right of action against the defendant arising from the delivery of the goods; neither would any such right come to the plaintiff as their assignee in bankruptcy. On this view of the facts reported, the judgment of the county court is correct, and is affirmed.