JOSEPH RANCHAU *vs.* THE RUTLAND RAILROAD CO.

October Term, 1898.

Present:  Ross, C. J., ROWELL, MUNSON, and THOMPSON, JJ.

Opinion filed January 12, 1899.

*Carrier—Variance—Baggage.*—An allegation that the defendant as common carrier received and undertook to safely carry and deliver for hire a box containing specified articles, is sufficient to admit proof of receipt of such property by the carrier as a part of the baggage of the plaintiff in consideration of his purchase of a ticket for himself and family.

*Evidence—Personal Knowledge.*—A question is presumed to have called for the witness's own knowledge, and the answer to have been given upon the same basis.

*Exception —"It Appeared."* — When exceptions state that certain facts appeared, they mean that there was no controversy over their existence.

*Purchaser of Ticket, when Bound by Restriction.*—A purchaser of an ordinary passenger ticket has a right to assume that the railroad is acting under its general liability as a common carrier and is not bound by any attempted restriction thereof printed upon it, unless he has notice when he buys it, and not then unless the restrictions are reasonable.

*Purchaser of Ticket, when Bound by Restriction.*—The plaintiff, who could neither read nor write and was not informed by any one, purchased a railroad passenger ticket containing a restriction upon the liability of the carrier in respect to loss of baggage.   *Held*, that he was not bound by the restriction.

*Reversal for Misstatement in Argument.*—It is reversible error for the

court to permit counsel to state in jury argument prejudicial matters of fact not in evidence. It it not enough that the court upon objection being made enjoins the counsel to confine himself to the facts, no correction being made by the court and no retraction by the counsel.

CASE for loss of baggage. Plea, general issue. Trial by jury, at the March term, 1898, Windham county, *Taft*, J., presiding. Verdict for the plaintiff with special findings. Judgment thereon for $158 damages and costs. The defendant excepted.

*W. W. Stickney* and *J. G. Sargent* for the defendant.

*C. F. Robb* for the plaintiff.

Ross, C. J.   (1)   The declaration, in substance, alleges that the defendant, in the capacity of a common carrier, undertook, for hire, to carry safely for the plaintiff from Burlington, Vt., to Fitchburg, Mass., a box containing certain specified articles, and there to deliver it to the plaintiff; that the box was delivered to the defendant, and that it so carelessly and negligently conducted, in the premises that the box and its contents were wholly lost to the plaintiff.

Against the objection and exception of the defendant, the plaintiff was allowed to show that on the occasion specified in the declaration, he purchased a ticket for himself and family, of the defendant, from Burlington ·to Fitchburg, and that defendant received as a part of his baggage, and gave him a check therefor, the box named in the declaration; that he with his family rode on the ticket to Fitchburg, but that the defendant did not safely carry nor deliver to him at Fitchburg the box, nor any of its contents.

The defendant insists that this box and contents should have been described in the declaration as the baggage of the plaintiff, and without such description the testimony excepted to was not admissible. This exception is not well taken. The capacity in which the defendant was acting and its undertaking are properly set forth, and the property sufficiently described to enable it to be identified. There

was no variance between the allegations of the declaration and the proof. If the box and contents had been described as baggage, it would only have added another element for its identification. It was not necessary for that purpose. Nor was it necessary to allege that the hire for carrying the box and contents was a part of the purchase money of the plaintiff's ticket for himself and family. The defendant was also a common carrier of the box and contents, even if it had by special contract to some extent limited its common law liability as such carrier.

(2) The baggage check for the box claimed to have been lost was 17,652. The defendant improved as a witness the baggage master at the Fitchburg station, who testified that he received no baggage answering to this check; that he made search for it for some time, and then passed the matter over to another servant of the Fitchburg Railroad. Against the exception of the defendant, on cross-examination, the witness was asked if they ever found a box or any baggage called for by this check anywhere on the Fitchburg road. The inquiry was proper. On its face it did not call for anything but the personal knowledge of the witness. His answer, no, must be presumed to be upon his personal knowledge, until something further was shown. The question did not call for what he had heard from others, as contended by the defendant, nor does his answer profess to be given upon information. But if the question and answer are capable of the construction claimed by defendant, the defendant could not have been injured by its admission. It is stated in the exceptions that *it appeared* by the defendant's testimony that the baggage was examined soon after the train left Burlington, and there was no baggage upon the train corresponding with the check for the claimed lost baggage, and none received by the Fitchburg station. Hence the testimony of this witness if improperly received was no more than what the defendant conceded to be true by its own witnesses. When exceptions state that certain

facts appeared, they mean there was no controversy over the existence of such facts.

(3) The ticket sold by the defendant to the plaintiff contained a clause stating that the defendant, "in selling the ticket and checking baggage hereon . . . acts as agent, and is not responsible beyond its own line." The verdict of the jury finding that the loss occurred on the defendant's own line, renders a consideration of this clause immaterial. It also contains a clause stating, "Baggage liability of any company is limited to wearing apparel not exceeding $100 in value." The special verdict finds that the plaintiff's damages were $158, of which $143 was for wearing apparel. The defendant contends that the court erroneously, against its exception, rendered judgment for the largest sum named. This attempt of the defendant to limit its common law liability as a common carrier must be considered with reference to the other undisputed facts stated in the exceptions. It is there stated that the evidence tended to show that the plaintiff could neither read nor write; that the tickets were not read to him by any person, and that he did not know the provisions of the tickets. With this testimony in the case, the defendant was not entitled to have the court comply with its four requests: "That the plaintiff is bound by the terms of the contract set forth on his ticket; that by said contract the defendant is only liable for loss of baggage occurring on its own line; that defendant's liability is limited to wearing apparel as specified in the contract; that the defendant's liability is limited to wearing apparel not exceeding $100 in value." These requests all assume that such a contract existed between the plaintiff and defendant. This assumption was not warranted by the testimony in the case.

The defendant by its charter became a common carrier of passengers and their baggage, subject to the common law rules in regard to liability therefor. By nearly universal concurrence of decisions of courts of final resort, including

the decisions of this court, such carrier may by contract reasonably limit and vary its common law liability, except as to its own negligence. But, being by its charter and occupation subject to the common law liability, it will be held to that liability until it establishes that it has limited or varied it by a contract, express or implied, existing between it and its passenger. The ordinary passenger ticket does not profess to contain the contract by which the passenger obtains his right to carriage over the road of the carrier. It is only a receipt, or token, given by the carrier for the passenger to show to its servants and managers of its trains, that he has purchased the right to be safely carried on its trains between the stations specified. In this respect it is different from a bill of lading for the carriage of freight. Whatever is printed on passenger tickets has usually been regarded as a notice by the carrier of its desire to limit or vary its common-law liability. To effect such limitation, the carrier must show that the passenger, when he paid his money and received the ticket, did it under such circumstances that he assented to the conditions named upon the ticket. Whether such assent is established depends upon the circumstances of each case. Assent will not be presumed unless a knowledge of the proposed conditions and limitations are known by the passenger, and then much will depend upon whether they are reasonable or unreasonable. If not entirely reasonable assent will not be presumed from knowledge merely, because the carrier without such assent is under the common law liability, and has the passenger at a disadvantage. The passenger's circumstances and necessities may be such as would compel him to assent to almost any conditions or limitations. Hence, when the conditions or limitations are not entirely reasonable, it is generally held that the assent to them will not be implied from a knowledge of them; but express assent must be established. As the defendant took no exceptions to the charge on the subject of the special

findings of the jury, it is to be presumed that the court stated the law correctly in regard thereto, and that the jury found, as the plaintiff's testimony tended to show, that he had no knowledge of the conditions placed by the defendant upon his ticket at the time he purchased it. He must have had knowledge of them at the time he paid his money. When purchasing the ticket, the passenger frequently has no opportunity nor time to examine it. He has a right to understand, unless directly informed to the contrary, that the carrier's undertaking has the common-law liability. It is unreasonable to hold, if the conditions printed on the ticket come to his knowledge first after he has entered upon his journey, that he should be held to have assented thereto.

His assent may well be assumed when he knows that the carrier is selling special tickets at reduced rates, with the conditions and limitations plainly stated in the notices of the sale of such special tickets. 3 Am. and Eng. Ency. of Law, Title, Baggage, Duty to Carry, 543 and notes; Limitation of Liability, 554 and notes; 5 *Ibid,* Carriers of Passengers; Limitations of Liability, 608, 612 and notes; *Bissell* v. *N. Y. Central R. R. Co.,* 25 N. Y. 442: 82 Am. Dec. 369 and note; *Hollester* v. *Nowlen,* 19 Wend. 234: 32 Am. Dec. 455 and note; *Cole* v. *Goodwin,* 19 Wend. 251: 32 Am. Dec. 470 and note; *Newell* v. *Smith & Clark,* 49 Vt. 255; *Mann* v. *Birchard,* 40 Vt. 326; *Kimball* v. *Rut. & Burl. R. R. Co.,* 26 Vt. 247; *Farmers and Mechanics Bank* v. *Champlain Trans. Co.,* 23 Vt. 186; *Blumenthal* v. *Brainerd,* 38 Vt. 402; *Ouimit* v. *Henshaw,* 35 Vt. 605; *Thorp* v. *R. R. Co.,* 61 Vt. 378; *Gillis* v. *Telegraph Co.,* 61 Vt. 461; *Hodd* v. *Express Co.,* 52 Vt. 335; *Davis & Gay* v. *C. V. R. R. Co.,* 66 Vt. 290. In *Davis & Gay* v. *C. V. R. R. Co.,* where a bill of lading is considered, it is said in regard to notices: "Notice, unless brought distinctly to the knowledge of the consigner in such a manner that the law will imply his assent to the limitation contained in the notice, will not be considered as entering into and forming a part of the contract." The special verdict does not establish that the plaintiff had

knowledge of the conditions printed upon his ticket, and his assent thereto will not be implied.   The defendant rests under the common law liability in regard to the loss of the baggage.   That liability, as held in *Ouimit* v. *Henshaw*, *supra*, entitles the plaintiff to recover for the bedding lost, or for his entire loss.

(4)   In the closing argument the plaintiff's counsel said: "The policy of the defendant was evidently to fight every claim; that if the defence was honest it would arbitrate . . . but, no, their policy was to fight."   There was no evidence in the case that authorized the assertion of these facts.   On the defendant's objection to this line of argument the court told the counsel to confine himself to a discussion of the testimony, and made no other ruling in regard to the defendant's objection, and allows exception to its action, if the matter was the subject of exception.   The counsel did not proceed further in that line of argument, nor did he retract the statements quoted.   The statement, if allowed to stand, was calculated to prejudice the defendant with the jury, and must have been intentionally made for that purpose.   It charged the defendant with making a dishonest defence to the plaintiff's claim, as a conclusion from alleged facts, of the existence of which there was no evidence in the case.   If it had been an unintentional mistake the counsel should, and would, have corrected it as soon as objection was made.   The court also should have corrected this statement of facts which did not exist.   Failing to do so, the defendant was entitled to an exception.   As said by this court in *Cutler & Martin* v. *Skeels*, 69 Vt. 161, "It was a statement of facts that he had no right to make, and as it was permitted by the court, we regard it as an implied ruling that such argument was legitimate."   Its allowance, under the circumstances, was reversible error.   *Magoon* v. *Boston & Maine R. R. Co.*, 67 Vt. 196; *State* v. *Hannett*, 54 Vt. 83; *Rea* v. *Harrington*, 58 Vt. 181.

*Judgment reversed and cause remanded.*