JOHN W. McDONALD v. FRANK L. PLACE.

February Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 20, 1914.

*Statute of Frauds—Promise to Answer for the Debt of Another —Waiver — Assumpsit — Pleading Payment — Necessity — Reference—Effect on Pleadings.*

The first section of our Statute of Frauds, P. S. 1576, requiring the promise to answer for the debt of another, etc., to be in writing, does not make such promise invalid, but is merely a rule of evidence, which may be waived, and is waived, if not insisted upon.

In assumpsit, the defence of full payment cannot be shown under the general issue without notice.

When a case is referred, the pleadings are to be treated as adapted to the facts found, unless that would bring in a new cause of action.

GENERAL ASSUMPSIT. Plea, the general issue. Heard on the report of a referee at the September Term, 1913, Washington County, *Stanton*, J., presiding. Judgment for the defendant to recover his costs. The plaintiff excepted. The opinion states the case.

*Richard A. Hoar* and *George W. Wing* for the plaintiff.

*S. Hollister Jackson* and *Warren R. Austin* for the defendant.

HASELTON, J. This is an action of general assumpsit brought by the plaintiff as receiver of the Sutherland Granite Company. The general issue was filed and the case was referred. Upon consideration of the referee's report judgment was rendered for the defendant to recover his costs. The plaintiff had an exception to this judgment.

The Sutherland Granite Company is a corporation organized by voluntary association, its articles of association having been

filed in the office of the Secretary of State, January 28, 1909. Its office and place of business was to be at Waterbury, and its articles of association were filed for record in the office of the town clerk of Waterbury on the date of their filing in the office of the Secretary of State. See P. S. 4289. Its articles provided for a capital stock of fifty thousand dollars divided into five hundred shares of a hundred dollars each. The corporation thus formed purchased and took over the granite business and property of the firm of Sutherland and Carroll, and assumed its obligations, and paid therefor by an issue of stock to the amount of 170 shares representing $17,000 which was the paid-up capital of the corporation as certified. See P. S. 4305. Seventeen thousand dollars was, however, an excessive valuation of the property and assets so purchased.

The "records" of the corporation show that the capital stock was increased from seventeen thousand to thirty thousand dollars, the additional stock of one hundred and thirty shares being taken out in the name of the company. But this is not a true record. All that there was to this was that the directors or some of them talked among themselves that in order to keep their indebtedness within the limit prescribed by law they would be obliged to make the additional issue and determined to make it but abandoned the scheme, though Mr. Sutherland made up and pasted into the record book a fictitious record of a meeting that was never held at which action making the contemplated increase appeared to have been taken. The referee rightly treats of the increase as proposed or attempted and not actual.

The records of the company are in several particulars grossly wrong or fictitious, and there are no exceptions relating to the findings that they are so, nor to the findings as to the true facts regarding the matters touched upon by the spurious "records," nor are there any exceptions relating to the course pursued and the findings made by the referee in any respect. The referee was the late H. Charles Royce, Esq., and the thoroughness and clearness of his report are such that the case presented to us is easily understood.

Some items of the plaintiff's specification are disposed of by the referee by the finding that they represented obligations assumed by the Sutherland Granite Company of which the plaintiff is the receiver, and that they represented no liability of the defendant to the company.

Under the report the amount for which the defendant is liable in this action, if liable at all, is three thousand two hundred and fifty dollars together with certain interest.

Some facts need to be stated for the determination of this question of liability or non-liability, a question which the referee submitted to the court.

At the outset one share only of the one hundred and seventy was issued to the defendant, and this one share was issued to him solely for the purpose of qualifying him as a director. See P. S. 4300. Afterwards the defendant purchased the stock of one Slocum and in the arrangement by which such purchase was made and in consequence of subsequent transactions the defendant became indebted to the company in the sum named by the master.

Thereafter the defendant negotiated with Joseph Frontini and the sons of Joseph, John and Antonio, for the sale to them of his stock and that of W. E. Sutherland which the defendant undertook to obtain for the Frontinis.

The defendant and Sutherland then owned nearly all of the stock of the company, all but a few shares, and the purpose of the Frontinis was to buy up the company by acquiring practically all of its capital stock. These negotiations were carried out and the Frontinis acquired the defendant's stock and Sutherland's stock, all but one share which Sutherland retained by the wish of the Frontinis.

We here briefly notice that Mr. Sutherland made up a fictitious record of action by the company, apparently relating to the proposed or attempted issue of one hundred and thirty shares of stock, and filled out and issued to the Frontinis a certificate for two hundred and ninety-seven shares of the capital stock of the Sutherland Granite Company, though the figures at the top of the certificate were for two hundred and ninety-one shares, and though the number of shares named in either way was wrong on any theory.

It is unnecessary to detail all the pretended records and proceedings since they had no particular relation to the actual facts, a statement of which we resume.

By the original contract with the Frontinis they were to pay cash for the stock of the defendant and Sutherland and were to have a week in which to raise the money. At the end of the week the arrangement was changed, and, with the ar-

rangement so changed and carried out, the defendant was paid· by a check of the company for one thousand two hundred and fifty dollars, by the surrender to him of his note for one thousand ·dollars held by the company and by the issue to the defendant of a series of the company's notes aggregating one thousand dollars. Having thus taken his pay for his stock from the company the defendant became indebted to the company in the sum of three thousand two hundred and fifty dollars, and· the question is whether that indebtedness was discharged before the bringing of the suit. At the time of the transaction the Frontinis represented to the defendant that they would take care of this matter so far as the company was concerned, and the defendant accepted and relied upon the assurances of the Frontinis that they would take care of the company, and make it good in respect to the transaction. Thereafter they paid the sum of two hundred dollars into the treasury and Joseph and John and two of their associates allowed their stipulated wages to remain in the treasury to the amount of two hundred and fifty-four dollars and twenty-five cents, and they induced two of their relatives, Colombo and Clerici, to turn over to the treasury of the company cash and notes amounting, with the items already referred to, to five thousand nine hundred fifty-four dollars and twenty-five cents. All of this was before the bringing of the suit and before the appointment of the receiver. The referee reports that, ''these several payments thus made into the treasury of the Sutherland Granite Company, by way of money, service, and the avails of notes and mortgages, aggregating in amount five thousand nine hundred and fifty-four dollars and twenty-five cents, were in accordance with the assurances given by the Frontinis at the time they purchased the Place and Sutherland stock.'' They thus met and discharged the obligation of the defendant to the company in accordance with the assurances given by them at the time of the purchase of his stock.

The effect of all that was done was to make the Frontinis liable to the corporation, and if it be considered that this liability was on a promise to pay the indebtedness of another and so on a promise not enforceable, it not being in writing, nevertheless they were obligors and not mere volunteers, for the first section of the Statute of Frauds, as it stands on our statute book, P. S. 1576, the provisions of which cover such a promise, does

not make the promise invalid, but is merely a rule of evidence which may be waived, and which is waived if not insisted upon. *Cunningham* v. *Blanchard*, 85 Vt. 494, 83 Atl. 469; *Hall* v. *Howard*, 77 Vt. 49, 58 Atl. 797; *Sartwell* v. *Sowles*, 72 Vt. 270, 43 Atl. 11, 82 Am. St. Rep. 943; *Pike* v. *Pike*, 69 Vt. 535, 38 Atl. 265; *Bettell* v. *Matat*, 58 Vt. 271, 5 Atl. 479; *Scofield* v. *Stoddard*, 58 Vt. 290, 5 Atl. 314; *Montgomery* v. *Edwards*, 46 Vt. 151, 14 Am. Rep. 618.

Here no question of evidence is involved. The second section of the Statute of Frauds, P. S. 1577, relating to the sale of goods for the price of forty dollars or more has indeed a different reading and has been given a different interpretation. *Patterson & Holden* v. *Sargent*, 83 Vt. 516, 77 Atl. 338, 138 Am. St. Rep. 1102; *Crosby* v. *Bouchard*, 82 Vt. 66, 71 Atl. 835; *Strong* v. *Dodds*, 47 Vt. 348.

But we are not concerned here with that section. Here the Frontinis were debtors, and not volunteers, whatever obstacle might have been thrown in the way of proving the fact, and the payments made by them by their procurement went in accordance with the purpose for which the payments were made though the company made no specific application. *Rowell* v. *Lewis*, 47 Vt. 366, 47 Atl. 783; *Farrington* v. *Jennison*, 67 Vt. 569, 32 Atl. 641; *Lyon* v. *Witters*, 65 Vt. 396, 26 Atl. 588; *Roakes* v. *Bailey*, 55 Vt. 542; *Lewis* v. *Parks*, 47 Vt. 336; *Boutwell* v. *Mason*, 12 Vt. 608; *Robinson* v. *Doolittle*, 12 Vt. 246.

Sometime after these payments certificates of stock were made out to the Frontinis and Colombo and Clerici. This transaction was intended by the parties thereto to effect a redistribution of the stock, and the shares issued to Colombo and Clerici were intended to be in return for what they had paid into the treasury in the manner above stated. But as their payments into the treasury had been made in accordance with the assurances given the defendant by the Frontinis at the time of the purchase by them of his stock, this subsequent action by which Colombo and Clerici were given stock for such payments could not relate back and undo what had been done to cancel the defendant's indebtedness in accordance with the assurances given by the Frontinis and the obligation assumed by them. If the Sutherland Granite Company under the new management issued stock in return for payments which had been made for another purpose the defendant is not prejudiced thereby.

The extinguishment of a debt by payment is a defence which in assumpsit cannot be shown under the general issue without notice, and the dictum to the contrary in *Shaw* v. *Moore,* 49 Vt. 68, is contrary to our statute then and now in force, and to our decisions since the enactment of No. 2, Acts of 1856, now P. S. 1500. This dictum is supported by reference to the practice at common law, 1 Chit. Pl. 472, which had, however, before the time of the 49th Vt. been done away with in England as well as here, in England by the rules of Hilary Term 4 Wm. IV. The dictum referred to is of no force. Partial payments, since they do not extinguish the right of action, stand on a different footing from payment proper and are foreign to any question here.

But though payment was not pleaded here nor given notice of under the general issue, that is immaterial, since the case was referred. When a case is referred the pleadings are to be treated as adapted to the facts found when by so doing no new cause of action is brought in. *Camp* v. *Barber,* 87 Vt. 235, 88 Atl. 812; *Gordon's Admr.* v. *Hotchkiss,* 82 Vt. 479, 74 Atl. 74; *Lamb* v. *Zundell,* 78 Vt. 232, 62 Atl. 33.

Questions of mismanagement not affecting this action of general assumpsit against the defendant were raised before the referee, but were disposed of by him in a manner to which no exception was taken. The judgment of the county court rendered on the report was correct and is

*Affirmed.*