HON. JAMES BARRETT,
HON. BENJAMIN H. STEELE, } ASSISTANT JUDGES.
HON. JOHN PROUT,

---

JAMES MORSE *v.* LAWRENCE BRAINERD AND OTHERS, TRUSTEES, AND RECEIVERS OF THE VERMONT & CANADA AND VERMONT CENTRAL RAILROAD COMPANIES.

### [IN CHANCERY.]

### *Railroad. Common Carriers.*

The principle is now well settled in this state that railroad companies as common carries may make valid contracts to carry and transport property beyond the limits of their own roads, and when they do, they are bound to deliver the property at its place of destination according to their contract, and are liable for all injury to such property prior to its delivery, although such injury happens after the property has passed over their road on its way, and while in the charge of other carriers over whom they have no control. This contract may be either express or implied.

Morse *v.* Brainerd et al., trustees of the Vt. & C. and Vt. C. R. R. Co's.

In England the rule is that where a railroad company, as common carriers, receive property destined and directed to a point beyond the termination of their own road, they are bound to deliver it at its place of destination, without a stipulation to that effect, and if the company would avoid such obligation they must do it by a stipulation limiting their liability to injuries happening upon their own road.

But in this country the rule established in most of the states, including Vermont, is that the company are liable for injuries that occur beyond the termination of their own road, only when they stipulate to deliver the property at a point beyond.

In this case the defendants as trustees, receivers, and managers of the Vermont & Canada and Vermont Central railroads for the first mortgage bondholders, having received property destined and directed to a point beyond the termination of said roads, it was *held* that the facts, as set forth in the opinion of the court, established an implied contract to deliver the property at such point; and that the defendants are liable for injuries received prior to its delivery, beyond the termination of said roads.

THIS was originally an action on the case in two counts brought by Morse against Brainerd and others, Trustees of the Vermont Central and Vermont & Canada Railroads, as common carriers, for damages sustained by said Morse on a car-load of cattle shipped, as will appear from the opinion of the court. The suit was entered at the September term, A. D. 1860, of the Franklin county court, and the same was enjoined in chancery by POLAND, Chancellor, upon the ground that said receivers were sought to be charged in a court of law for acts done by them as receivers, acting as the officers of the court of chancery, under the direction and control of that court; and, as such receivers, only accountable in a court of chancery.

The petitioner, by his solicitor, then filed his petition to the chancellor, praying, among other things, that a special master in chancery might be appointed to take the testimony and report to the court of chancery, which was granted, and the master made his report. Upon the facts reported by the master and the testimony in the case, Chancellor PIERPOINT made a *pro forma* order that the receivers pay the sum found due by the master. From this order the receivers appealed, and the case passed to the supreme court.

*Dewey & Noble*, for the defendants, cited *Van Santvoord* v. *St. John*, 6 Hill, (N. Y.) 157 ; *Nutting* v. *Conn. River R. R.*, 1 Gray, 502 ; *Briggs* v. *Boston & Lowell R. R. Co.*, 6 Allen, 246 ; *Hood* v. *N. Y. & N. H. R. R.*, 22 Conn., 1 ; *Ellmore* v. *Naugatuck R. R.*, 23 Conn., 457 ; *Brintnall* v. *S & W.R. R.Co.*, 32 Vt., 665 ; *Ouimet* v. *Henshaw et al.*, 35 Vt., 605 ; *Naugatuck R. R.* v. *Water-*

Morse v. Brainerd et al., trustees of the Vt. & C. and Vt. C. R. R. Co's.

*bury Button Co.*, 24 Conn., 468; *Converse et al.* v. *C. Transportation Co.*, Am. Law Reg., New Series, Feb. 1867, 214; *Farmers & Mechanics' Bank* v. *Champ. Transportation Co.*, 23 Vt., 186; *S. C.*, 18 Vt., 131; *S. C.*, 16 Vt., 52; 11 Allen, 295.

*E. A. Sowles*, for the petitioner, cited *Sprague* v. *Smith*, 29 Vt., 421; *Noyes & Co.* v. *Rutland & Burlington Railroad*, 27 Vt., 110; *Hooper* v. *Wells, Fargo & Co.*, Am. Law Reg., Nov. 1865, 16; *Farmers & Mechanics' Bank* v. *Cham. Trans. Co.*, 23 Vt., 186; *Wilbert* v. *N. Y. & Erie R. R.*, 2 Kernan, 245; *Weed* v. *Saratoga & Sch. R. R.*, 19 Wend., 534; *St. John* v. *Van Santvoord*, 25 Wend., 660; *Van Santvoord* v. *St. John*, 6 Hill, 157; *Champion* v. *Bostwick*, 18 Wend., 175; *Campbell* v. *Perkins*, 4 Selden, 430; *Cary* v. *Cleveland & Toledo R. R. Co.*, 29 Barb., 35; *Foy* v. *Troy & Boston R. R. Co.*, 24 Barb., 382; Redfield on Railways, 284, and cases there cited; *Perkins* v. *Portland & Saco R. R.*, 47 Maine, 573; *Angle & Co.* v. *M. & M. R. R.*, 9 Iowa, 487; *Carter* v. *Peck*, 4 Sneed, (Tenn.) 203; *Bennett* v. *Filyaw*, 1 Florida, 403; 2 Hilliard on Torts, 557 and 558; *Wheeler* v. *S. F. & A. R. R. Co.*, 6 Am. Law Reg., 606; *Mallory* v. *Tioga R. R. Co.*, 39 Barb., 488; *Barshell* v. *Steam.* 32 Wis., 256; *Lapham* v. *Green*, 9 Vt., 407; *Tel. Co.* v. *DeRutte*, Am. Law Reg., May, 1866, 407–410.

The opinion of the court was delivered by

PIERPOINT, C. J. This case comes into this court by appeal from a decree of the court of chancery accepting the report of a master, and determining the amount due from the defendants to the plaintiff, James Morse. The preliminary proceedings, which have resulted in bringing the case before us in its present form, we have not been furnished with the means of stating. That is probably a matter of no importance, as no questions are now made by counsel on either side, except such as arise upon the master's report.

From that, it appears that the defendants were, and still are, operating the Vermont Central and Vermont & Canada railroads, as trustees, receivers and managers, for the first mortgage bondholders, by the appointment and under the direction of the court

of chancery, and that the business of said roads, and of said trustees and receivers, was and is to carry passengers and freight for hire, and that said trustees and receivers were operating said roads for that purpose, under their said appointment as aforesaid. That on the 14th of November, 1859, and while the defendants were in the possession of and operating and managing said roads as such receivers, the said Morse delivered to them, at Swanton, in this state, a quantity of cattle; that the said cattle were received by one Bradford Scott, station agent at said Swanton, the agent and servant of the defendants at that place for such purpose; that the said cattle were the property of said Morse, and were shipped for, directed to, and were to be delivered at Medford, Mass., and were received to be sent and forwarded to that place. The cattle were duly sent forward by the defendants; they were transported safely over the Vermont & Canada and Vermont Central roads, but while on the lower and connecting roads, and on their way to Medford, the point of their destination, they were materially injured and damaged, so that on their arrival at Medford they were of much less value, by reason of such injury, and in consequence thereof the said Morse sustained a serious loss. A compensation for that loss is what the said Morse is now seeking in this proceeding.

The defendants claim that they are not liable for any injury to the cattle that happened after they passed off from the roads of which they had the charge and management on to the connecting roads and on their way to said Medford.

The principle is now well settled in this state that railroad companies, as common carriers, may make valid contracts to carry and transport property beyond the limits of their own roads, and when they do, they are bound to deliver the property at its place of destination, according to their contract, and are liable for all injury to such property prior to its delivery, although such injury happens after the property has passed over their road on its way, and while in the charge of other carriers over whom they have no control. *Noyes* v. *Rutland & Burlington R. R. Co.*, 27 Vt., 110, and the cases there referred to. This contract may be either express or implied. In England the rule is, that when

Morse ₑ. Brainerd et al., trustees of the Vt. & C. and Vt. C. R. R. Co's.

a railroad company, as common carriers, receive property destined and directed to a point beyond the termination of their own road, they are bound to deliver it at its place of destination, without a stipulation to that effect. The law imposes that obligation, upon the receipt of the property, and if the company would avoid such obligation, they must do it by a stipulation limiting their liability to injuries happening upon their own road. But in this country the rule established in most of the states is, that the company is liable for injuries that occur beyond the termination of their own road, only when they stipulate to deliver the property at a point beyond, and that is the extent to which the decisions in this state have, as yet, gone, and is as far as we are now disposed to go.

If, then, the defendants are to be made liable in this case, it must be upon the ground that they received the property in question under a contract, express or implied, to deliver it at Medford, its place of destination.

Whether there was such a contract or not, is mainly a question of fact, to be determined upon the master's report and the evidence referred to.

That there was no express contract for the delivery of this property at Medford is conceded. Was there an implied contract to that effect?

From the master's report and the testimony of Lawrence Brainard, one of the defendants, which is referred to as a part of said report, it appears that there was a business arrangement entered into between the several roads that constitute a line of communication by railroad from Ogdensburgh, in the state of New York, to Boston, Mass., for the transmission of passengers and freight; that in this chain, the Vermont & Canada and the Vermont Central railroads constitute links; that under this arrangement, when a car-load of property was sent from one point upon the line to another, it went to its destination without a change of cars; the amount to be paid for carrying the property through the whole distance was agreed upon and fixed at its place of departure, by the parties receiving it; this sum might be paid in gross by the consignor in advance, or by the consignee on its arrival; the freight was not to be paid to the several roads over which the

Morse v. Brainerd et al., trustees of the Vt. & C. and Vt. C. R. R. Co's.

property passed in its transit, but the amount which each was to receive was adjusted between themselves in their monthly settlements. This property was billed through from the place where received to the place to which it was sent; and the way-bill, in this case, is quite significant of what the practice was, and how the parties understood the transaction. It was as follows: "Merchandise transported by the trustees first mortgage bonds Vermont Central railroad company, *from Swanton, Vt., to Medford, Mass.*, November 14, 1859." Then is entered the number of the car and name of the owner, name of the consignee, description of the property, weight, rate per hundred, and the whole amount of the freight, "*payable at the station sent to.*" When a party sends a car-load of live stock over the roads, he is entitled to a free pass over all the intermediate roads on the train with the car, to its place of destination. Such a pass was given to Morse. These facts, and, in short, without stopping to enumerate further, the great mass of facts and testimony reported by the master, are consistent, and many of them only consistent with the idea of an assumed liability to transport the property, in this case, from Swanton to Medford. Such, we think, must have been the understanding and expectation of Morse and the station agent at Swanton, at the time the property was put on to the defendants' road at that place. It was according to the regular and established course of their business, and such an agreement would have been within the legitimate scope of the authority of the station agent.

We think the fair and just implication from the whole case, as we have it before us, is that the defendants, when they received the property of Morse, took upon themselves the obligation to transport the property safely from Swanton to Medford, and, such being the case, they are liable to Morse for the injury the property sustained on its way, as reported by the master.

As there are two cases now before us, between the same parties, depending upon the same principles and similar facts, the entry will be in both cases that the decree of the chancellor, accepting the report of the master and fixing the liability of the defendants, and the amount thereof, is affirmed, and the cases remanded to the court of chancery for final disposition.