NEWELL AND OTHERS *v.* SMITH AND CLARK.*

*Receivers in Chancery of Railroads. Common Carriers. Agent. Bill of Lading. Evidence. Damages.*

In the operation and management of railroads by receivers in chancery, they sustain to persons dealing with them the character of common carriers; and though they may at all times invoke the aid of the Court of Chancery in any matter affecting their duty or liability under their receivership, yet, waiving this, they are amenable in the common-law courts to actions for negligence as carriers.

A carrier of freight who expressly contracts to deliver goods at a destination beyond the terminus of his own road, is answerable for the negligence of any connecting road in the line of transportation.

A. was defendants' freight and passenger agent at B., and as such had authority to sign contracts of shipment like the one in question. S., who signed A's name to the contract in question as such agent, was a clerk in A's office, and the execution of such contracts was part of his business. *Held*, the same as though A. had signed his own name, and that defendants were bound thereby.

A bill of lading imported on its face an absolute undertaking. On the back thereof were printed rules and regulations that modified such undertaking, but it did not appear that the shippers had knowledge thereof. *Held*, that evidence modifying such undertaking should come from the party apparently bound thereby.

A bill of lading bound the carriers to forward the goods to their destination with the usual despatch. To show the usual time of transit, the shippers called a witness who testified thereto, but said he derived his information from a clerk in the freight office at the place of destination. *Held*, that fact being peculiarly within the knowledge of the carriers, that slight evidence thereof on the part of the shippers was sufficient, and that the testimony was competent.

The rule of damages for negligent delay in the transportation of goods by common carriers, is the difference between the market value of the goods at the time they should have arrived at the place of delivery and the time they did arrive there, with interest thereon, *as damages*, from that time.

ASSUMPSIT against the defendants as common carriers of goods. The case was referred, " to be heard and tried according to law." The referee found and reported as follows :

---

*Decided at the January Term, 1876.

During the year 1866, the defendants and Lawrence Brainard (who died before the commencement of this suit), as receivers, appointed by the Court of Chancery in this state, were, and for some time before had been, in possession of and operating the Vt. Central and the Vt. & Canada Railroads, located in Vermont, and the Montreal & Vt. Junction Railroad, located in the Province of Quebec, Canada, forming a continuous line of railway between Burlington, Vt. and St. Johns, Canada, and there connecting with the Grand Trunk Railway, which, with the Michigan Central Railroad, forms a continuous line of railway reaching to Chicago, in the state of Illinois ; and the defendants as such receivers, operated their said railroads in the usual way of operating railroads as common carriers of passengers and freight.

On the 22d of September, 1866, the plaintiffs, by their agent, N. Allen, delivered (marked and addressed as stated in the receipt hereinafter mentioned) at the railroad depot of the defendants and the said Brainard, at Burlington, seven cases, containing 1794½ yards of cassimere, manufactured at Hinesburgh, Vt., belonging to plaintiffs jointly, to be transported by said railroad line from Burlington to Chicago ; and then and there received from one Storrs, a freight agent of the defendants and the said Brainard, then and for some years before and afterwards employed as such agent at said depot, who was and had been in the habit of receiving freight to be transported by the defendants and the said Brainard as such carriers, and of executing such papers, which was within the line of authority to do, and who, as such agent, received the goods in question,—a receipt marked "A," and of the tenor following :

Vermont Central Railroad Cosporation,
Burlington, Sept. 22d, 1866.

Marks and Numbers. }
  H. H. Newell, }     Received from N. Allen,
care }           7 Cases Mdse.,
Baldwin, Stone & Co., }       By Merchants Express.
  Chicago, Ill. }

Numbered and marked as above ; which the Company promises to forward by its railroad, and deliver to H. H. Newell or order, at its depot in Chicago, he or they first paying freight for the same at the rate customary per ton of 2,000 pounds.

N. B. If merchandise be not called for on its arrival, it will be stored at the risk and expense of the owner.

G. S. Appleton, for the corporation.
Storrs.

Among the " rules and regulations that have been adopted by the several railroad companies in regard to freight," printed on the back of said receipt, was the following :

The Company will not hold themselves liable at all for any injury to any articles of freight during the course of transportation, from the weather or accidental delays. *Nor will they guarantee any special despatch in the transportation of such articles, unless made the subject of express stipulation.*

By the usual and ordinary course of business of said Merchant's Express, and of transportation over said line of railway, the plaintiffs' said goods ought to and would have arrived in Chicago from .the first to the fifth of October, 1866 ; but though said goods were shipped and started from the defendants' depot at Burlington, by the defendants' agents at that place, on the 25th of September, 1866, and passed without delay over the roads so operated by the defendants and said Brainard to St. Johns, and were there delivered 'in good order by the defendants and said Brainard to the Grand Trunk Railway, they were, for some cause not shown nor explained, unreasonably delayed by the Grand Trunk or upon some one of the railroads forming a part of said line, after the same were delivered by the defendants to the Grand Trunk, so that they did not arrive at the Michigan Central depot in Chicago, until the 22d of October, 1866 ; and the plaintiffs' agents at that place, Messrs. Baldwin, Stone & Co., were not notified of such arrival until the 24th of that month, though they were vigilant in inquiring for them at the proper place. The usual time of transit .over said route, and that there was unreasonable delay therein, is found from the testimony of Edward Stone, a produce commission merchant in Chicago, to which objection was made, who testified that there was such delay, and that six to nine days was the usual time of transit from Burlington to Chicago over fast freight lines, but said all he knew about such usual time was what he was told by a clerk in the Michigan Central freight office at Chicago.

The cars of the said receivers did not.run on the Grand Trunk, that being a broad-guage railroad, and the goods were transferred from the receivers' cars to those of the Grand Trunk.

The plaintiffs' goods were worth in the Chicago market on the fifth of October, 1866, and for some days prior to that day, $1.37½ per yard, and freight, or $2,505.44 in the whole ; but by reason of a subsequent decline—the precise time of the beginning of which I am unable to find—in the price of such goods in that market, caused by the business of the season and the supply of such goods on hand, said goods at the time of their arrival in Chicago, and for some months thereafter, were worth not exceeding 75 cents per yard ;—and the plaintiffs, though they exercised due diligence in trying to sell the goods, were unable to sell them at that price even.

33

On the 24th or 25th of September, 1866, Newell took samples of those goods to Field, Leiter & Co.'s store, in Chicago, as they were then large dealers in all kinds of dry goods, and there saw Mr. Field of that firm, and offered to sell him the goods, which he represented were then *en route* from Vermont to Chicago. Field offered to pay him $1.37½ per yard for the goods, and pay the freight. Newell called on Field, Leiter & Co. on the 15th or 16th of October, and informed them that the goods had not arrived, and Field told him they could not then receive the goods, as it was then too late in the season to sell them.

On the 17th or 18th of October, Newell took his samples and showed them to a number of wholesale dealers in cloths and dry goods, in Chicago, and offered to sell his goods, *to arrive*, stating the quantity, but could get no offer for them at any price. The referee finds, from the testimony of Edward Stone, that he was present when Field offered to pay Newell the said $1.37½ per yard for said goods.

The goods arrived at the Michigan Central freight depot, in Chicago, in good order, on the 22d of October; but between the 5th of October, when they should have arrived at Chicago, and the said 22d, when they did arrive, they had depreciated to the amount of $1,159.57. Upon this amount the referee has computed interest from October 5th, 1866, to April 6th, 1875, (the first day of the April Term), amounting to $590.38. And upon this basis the referee finds, that if the plaintiffs are entitled to recover in this action, they are entitled to recover $1,749.95 for their damages.

At the time of the shipment of the goods in question, and for many years before and afterwards, G. S. Appleton, whose name is subscribed to said receipt or contract, was freight and passenger agent of the defendants and Brainard, at Burlington, and was aware of this shipment by Storrs, from entries he saw on the books in the railroad office at Burlington; but he did not himself see the goods, nor have anything to do about shipping them. The referee based his finding upon the question of Storrs's said authority, to a large extent, upon the testimony of said Appleton, whom plaintiffs called as a witness, and who, in his direct examination, testified that he had been connected with the Vt. Central and Vt. & Canada Railroads, at Burlington, about twenty-one years, and was freight and passenger agent of the managers of said roads during the whole of the year 1866; that said Storrs was a freight clerk at the same place for a period of three or four years prior to 1868; that exhibit " A," which was shown to the witness, was filled by Storrs; that Storrs was in the habit of

executing such papers, and that the execution thereof was within the line of his authority as such clerk. There was no testimony before the referee of any other particular instance of the execution by Storrs of such a paper. It appeared, without dispute, that the goods in question were shipped at Burlington over the roads managed by the defendants and Brainard; that an entry of such shipment was regularly made by Storrs upon the proper book kept at the defendant's freight office in Burlington, which entry was soon after seen by Appleton; that the freight on said goods from Burlington to Chicago, amounting to about thirty-eight dollars, was afterwards paid to Appleton by the plaintiffs; and that when Appleton was informed by the plaintiffs that there was delay in the transportation of these goods, he sent out tracers to find them. Upon this testimony and these circumstances, I base my finding that Storrs was authorized to execute said contract.

The following facts were agreed to as governing the trial of the case, and appended to the report:—

That during the whole year 1866, Lawrence Brainard, Joseph Clark, and J. Gregory Smith, were operating the Vt. Central and the Vt. & Canada Railroads in Vermont, and the Montreal & Vermont Junction Railroad, connecting the Vt. & Canada Railroad with the Grand Trunk Railroad of Canada at St. Johns, in Canada, in the usual way of operating railroads, as receivers, appointed by the Court of Chancery of the state of Vermont, in the cause of the Vt. & Canada Railroad Co. against the Vt. Central Railroad Co. and others, then and now pending in the Court of Chancery in the County of Franklin; that said Brainard since deceased, before this suit was brought; that on the 22d of September, 1866, the plaintiffs delivered at the depot of the railroads managed by such receivers, at Burlington, seven packages of merchandise, consigned to H. H. Newell, Chicago, Ill.; that the same were duly transported over the railroads managed by such receivers, and delivered to the Grand Trunk Railroad on the 25th of September, 1866, in good order and without any delay; that said merchandise did not arrive in Chicago until the 22d of October, 1866; that the cars of said receivers did not run on the Grand Trunk, which is a broad-guage road, and the goods were transferred from the receivers' cars to those of the Grand Trunk; and that the freight depot of the Michigan Central Railroad in Chicago was the place where said merchandise should arrive and be delivered to the consignee.

On hearing on exceptions to the report by the defendants, at the September Term, 1875, PIERPOINT, C. J., presiding, the court rendered a *pro-forma* judgment on the report for the plaintiffs; to which the defendants excepted.

*Levi Underwood,* for defendants.

The relation that the defendants bore to the railroads and the transportation of the goods in question, is stated in the stipulation annexed to the referee's report.

The plaintiffs claim that defendants entered into a special contract, by which they became personally bound to transport the goods in question to Chicago within a reasonable time, and that they failed to do so; that the price of the goods fell in market, and that plaintiffs have a right to recover the difference between the price of the goods when they should have arrived in Chicago and when they did arrive there. We claim that defendants are not personally liable on any contract, express or implied, in performance of their duties as receivers; and there is no pretence that they had any connection with these goods, except in their capacity as receivers. We do not deny that if plaintiffs have a cause of action, they have a remedy for it—and that is, to apply to the court that has charge of the railroads. If defendants had committed a *tort*, or entered into a *personal* contract as common carriers, they might be liable for a *tort* committed by them, or a breach of contract. But the case does not show that personally they were common carriers; nor that they acted in any other way than as *receivers or agents* in the management of the corporation railroads. The property of these railroads is chargeable for their liabilities; but the mere servants who are operating them are no more liable than the president and superintendent of a railroad company are personally liable on the contracts of the company.

The responsibility imposed upon common carriers for hire, is greater than that of any other class. A common carrier is regarded by the law as an *insurer* of the property intrusted to him. The loss or damage done to the property in his possession to be carried, is of itself sufficient proof of negligence—treating everything as negligence which the law does not excuse; so that his faultlessness is no discharge. Angell Carriers, s. 67. The liability is based upon the personal gain to the carrier. If, therefore, the contract, express or implied, is with the receiver personally, then that must be the only redress the owner of the property has for loss or damage. He can have no claim upon the

property in the hands of the receiver ; but must rely entirely upon the personal responsibility of the receiver, without reference to his bond, or to the railroads of the corporations which are in his hands.

Again, if defendants are *ipso facto* common carriers because they are receivers of a railroad, then they could no more restrict their personal liability as such than any other common carrier. It is obvious that whoever deals with these railroads, does so upon the credit of the property, and not upon the personal responsibility of the receivers. In so far as the case of *Blumenthal* v. *Brainard*, 38 Vt. 402, conflicts with these principles, it is not a sound nor a safe rule.

We claim that the law in this state is well settled, that in the absence of an express contract or a uniform, established custom, the receipt of a carrier of goods consigned to a point beyond the line of his route, is only bound to carry them properly over his own route, and deliver them to the next carrier. *Farmers & Mechanics' Bank* v. *Champlain Transportation Co.*, 16 Vt. 52 ; s. c. 18 Vt. 131, and 23 Vt. 186 ; *Van Sanvoord* v. *St. John*, 5 Hill, 158 ; *Hood* v. *New York & New Haven R. R. Co.* 22 Conn. ; *Nutting* v. *Conn. R. R. Co.* 1 Gray, 502 ; 2 Redf. Railw. s. 162.

The plaintiffs, to prove a special contract with defendants personally to carry the goods to Chicago, offered the paper marked " A," to which defendants objected, and denied that it was their contract, or that Storrs had any authority to make any such contract to bind them. This paper does not purport to be a contract of the defendants, either personally or as receivers. It purports to be a contract of the Vermont Central Railroad Co., and to be signed by a clerk of Appleton's, who was agent. And to prove the authority of Storrs to sign it as he did, they introduce Appleton ; and the referee reports that upon his testimony, and the fact that the freight was subsequently paid to Appleton by the plaintiffs, and that when Appleton was informed by the plaintiffs that there was delay in the transportation of the goods, he sent out tracers to find them, he bases his finding that Storrs was authorized to execute the contract, and that it was the contract of the defendants. This is clearly erroneous. These circumstances

had nothing whatever to do with the contract, nor the authority to execute it.

The provision in the contract that the company will not hold themselves liable at all for accidental delay, nor guarantee any special despatch in transportation, unless made the subject of express stipulation, clearly exonerates the defendants.

The referee erred in the rule of damages. The fact that the market might have fluctuated, is no criterion for a rule of damages. The goods arrived in good order, and hence there was no damage to the goods. The plaintiffs had not sold them, and were not liable for damage for non-delivery. The defendants did not contract for any particular time for delivery, and have not broken any contract in this respect. There was no evidence of any market price at the time the goods should have arrived. All the testimony in the case on this point was that of the plaintiff, H. H. Newell, who testified that on or about the 24th of September, he took samples of these cloths to Field, Leiter & Co., and represented the goods in transit, and Field told him he would give him $1.37½ cents a yard for them and freight. This is no evidence to prove a market price on the 5th of October, of $1.37½ a yard.

There was no evidence to prove what the market price was when the goods arrived. Said plaintiff testified that on the 17th or 18th of October, he showed samples to a number of wholesale dealers in cloths, and offered to sell them to arrive, but could get no offer at any price. This testimony does not warrant the finding of the referee that the goods were worth in the market of Chicago but seventy-five cents a yard on the 22d of October.

There is not the slightest evidence in the case that the goods should have arrived on the 5th of October. Stone testified that there was unreasonable delay in the transportation of the goods; that the time ordinarily required by fast freight lines for transportation from Burlington to Chicago, was from six to nine days; and that his knowledge was derived from a clerk in the freight office at Chicago. All this kind of evidence was objected to, and is the poorest quality of hearsay.

The fluctuations in the market, where the goods are uninjured, and where there are no special circumstances, and especially

where the fall in price is in consequence of an over-supplied market, — is not the basis for damages. *Wiber* v *N. Y. & Erie R. R.* 19 Bart. 36 ; *Conger* v. *H. R. R. Co.* 6 Duer, 275.

The referee erred, also, in allowing interest. Interest is not recoverable at common law, and our statute does not warrant it in this case. Our statute has been construed to allow interest for withholding money or property, or for damage to, or destruction or conversion of, property ; but has not been extended to any matter of mere damage, theoretically, such as slander, assault and battery, false imprisonment, negligence by which personal injury ensues, breach of promise of marriage, &c. *Illinois Central Railroad Co.* v. *Cobb, Blaisdell & Co.* Supreme Court of Illinois, Chicago Legal News, May 8, 1875.

*E. R. Hard*, for plaintiffs.

1. At the time of the shipment of the goods in question, the defendants were operating the Vt. Central and the Vt. and Canada Railroads, " in the usual way of operating railroads, as *common carriers* of passengers and freight." Their liability in the present case, is not affected by the fact that they were *receivers*. *Blumenthal* v. *Brainerd*, 38 Vt. 402 ; *Morse* v. *Brainerd*, 41 Vt. 550 ; *Cutts* v. *Brainerd*, 42 Vt. 566.

2. The receipt referred to in the referee's report, if binding upon the defendants, obligated them to transport the goods to Chicago. It is stronger against the defendants than the one in *Cutts* v. *Brainerd*, because, although precisely the same form was used in both cases, in this case the place of delivery was *expressed*, while in that, the blank left for the insertion of the place of delivery by the carrier was not filled.

3. The execution of the receipt by Storrs was binding upon the defendants. Storrs was a freight agent of the defendants, and as such, and in accordance with his habit, received and forwarded the goods in question. This alone would seem sufficient to establish the liability of the defendants upon this contract. But in addition to this, the referee reports facts which amount to a full *ratification* of the acts of Storrs. Story Agency, s. 443 ; *Deming* v. *Railroad*, 48 N. H. 455, 472 ; *Rogers* v. *L. I. R. R. Co.* 38 How. Pr. 289.

4. Under the receipt in question, it was the legal duty of the defendants to deliver the goods in Chicago within a reasonable time. Angell Carriers, s. 283; 2 Redf. Railw. 161; *Ward* v. *N. Y. C. R. R.* 47 N. Y. 29; *Mann* v. *Birchard*, 40 Vt. 326. The finding of the referee that the goods were "*unreasonably* delayed," is conclusive of negligence on the part of the defendants. But if the referee had not so reported, the fact that they did not arrive until from sixteen to twenty days after they should, in the ordinary course of business, have arrived, is *prima-facia* evidence of the negligence; and no sufficient excuse for the delay having been shown, the defendants are liable. Angell Carriers, s. 202, and notes.

5. The rules and regulations printed on the back of the receipt, do not affect the plaintiffs' right to recover in this action. To render these effectual to limit or modify the duties and liabilities of the defendants, it is necessary that they should have been brought to the notice of plaintiffs, and have been assented to by them, and the burden of proving these facts is on the defendants. 2 Redf. Railw. 76, 79, 84; *N. J. Steam Navigation Co.* v. *Merchants' Bank.* 6 How. 344; *Blumenthal* v. *Brainerd*, 38 Vt. 402; *Kimball* v. *Rutland & Burlington R. R. Co.* 26 Vt. 247; *Mann* v. *Birchard*, 40 Vt. 326; *Brown* v. *The Eastern Railroad Co.* 11 Cush. 97. And even if the limitation of liability expressed on the back of the receipt had been assented to by plaintiffs, it would not excuse negligence on the part of defendants. 2 Redf. Railw. 84 *et seq.*; *Blumenthal* v. *Brainerd*, 38 Vt. 402.

6. The rule of damages adopted by the referee is quite as favorable to the defendants as they have a right to claim. *Deming* v. *Railroad*, 48 N. H. 455; *Ward* v. *N. Y. C. R. R. Co.* 47 N. Y. 29; Redf. Railw. 7, 8, 25, 26, 162, 163, note; Sedgw. Dam. 424, 427, 428, 477, and note.

The opinion of the court was delivered by

POWERS, J.   The defendants were receivers in chancery of the property of the railroads employed in part in the transportation of the goods in question. In the operation and management of the roads, they sustained to persons dealing with them the char-

acter of common carriers. They at all times might invoke the aid of the Court of Chancery in any matter affecting their duty or liability under their trusteeship; waiving this, they are amenable in the common-law courts to actions for negligence as carriers. We have no occasion nor inclination to modify the doctrine heretofore announced by the courts upon this subject. *Blumenthal* v. *Brainard*, 38 Vt. 402; *Morse* v. *Brainard*, 41 Vt. 550; *Cutts* v. *Brainard*, 42 Vt. 566.

A carrier of freight who expressly contracts to deliver goods at a destination beyond the terminus of his own road, is answerable for the negligence of any connecting road in the line of transportation. Such carrier, so contracting, employs such agencies to effect the transportation as he pleases, and thus makes the connecting lines employed by him, his agents or servants, for whose default he is responsible to the same extent that he is for that of his own immediate employes.

Appleton is conceded to have been the general agent of the defendants, fully authorized to execute and sign contracts like exhibit A. If this contract had been executed by him, it would, confessedly, have been binding upon the defendants. The contract was in law executed and signed by Appleton; Storrs was a freight clerk under Appleton. " The executing of such receipts was a part of his business." His signing Appleton's name to this receipt, under the authority he had, was in law Appleton's act. *Qui facit per alium facit per se.* It was Appleton's contract then, not Storrs's, and as such, binding on his principals.

The conditions on the back of exhibit A, are not referred to on the face of the instrument, and there is nothing in the case to show notice to the shipper of their existence. The face of the instrument imports an absolute and express undertaking; and evidence modifying this undertaking should come from the party apparently so bound.

The evidence received to show the ordinary time for the transit from Burlington to Chicago was proper. Under the contract, the defendants were bound to forward the goods with the usual expedition. What that usual time was, was matter peculiarly within the knowledge of the defendants themselves, and in the absence

of contradictory evidence from them, slight evidence of this fact will be sufficient for the purpose of the plaintiffs.

The evidence tended to show negligence of the defendants in respect to the time employed in transporting the goods. The measure of damages for such default is the difference between the value of the goods at the place of delivery at the time they ought to have arrived, and their value at the time they in fact arrived. *Ward* v. *New York Central R. R. Co.* 47 N. Y. 29; *Deming* v. *Grand Trunk R. R. Co.* 48 N. H. 455; *Cutting* v. *Same*, 13 Allen, 531. The value of the goods means their market value. If that value has fallen while the goods were negligently delayed in the transit, such loss is a direct consequence of such delay. In fixing the damages, it is proper to take into view the time when the injury and loss occurred, and to allow as damages, interest from that time  We think the question of damages was rightly settled by the referee. *Lansent* v. *Vaughn*, 30 Vt. 90; *King* v. *Woodbridge*, 34 Vt. 565; 18 Am. Rep. 8.

Judgment affirmed.