FRANK HADD *v.* UNITED STATES & CANADA EXPRESS COMPANY.

*Contract. Common Carrier. Evidence.*

In the absence of special contract, a common carrier receiving a parcel marked to a point beyond its route, but having no special business relationship with the carrier on the connecting line, is responsible, as such carrier, only for safe and seasonable delivery at the end of its own route to the carrier next in the line of transportation.

In case for money delivered to the agent of an express company to be sent to a place beyond the route of the company, it appeared that plaintiff paid charges through, and received a receipt for the money to be sent containing a memorandum of such payment. *Held,* that on the facts, *q. v.,* there was not a special contract to carry to destination.

The receipt contained a clause limiting the liability of the company to the risks of carriage to the end of its route. The consignor could not read, and the agent read

the principal part of the receipt to him, but did not read that clause. *Held*, that as that clause was expressive only of the company's liability under the law, the omission to read it was no fraud on the consignor.

Such a receipt, like any simple receipt, may be explained by parol evidence.

CASE against an express carrier for negligently so carrying a package of money that it was lost, with a count in trover. The case was referred, and the referee reported facts as follows:

On January 3, 1877, the plaintiff delivered a package of money of the value of $300 to D. Paul, agent at East Berkshire of the defendant,—a firm composed of Benjamin P. Cheney and Nathaniel White, and a common carrier in the express business over a large number of railroads in New England, including the road through East Berkshire to Essex Junction,—to be sent thence by express to Joseph Melendy, in Jericho, a place beyond Essex Junction. The plaintiff asked Paul, when he handed him the money, to put it into an envelope and seal and direct it, which he did, directing it as follows: "J. H. Melendy, Jericho, Vt. *Via* Stage from Essex Junction to Jericho." The plaintiff at the same time told Paul that he wanted to pay the express charges. Paul on examination of the tariff told the plaintiff the charges would be thirty-five cents to Essex Junction, and, that he could not bill beyond that place as the defendant's route did not extend beyond it. The plaintiff said he wanted to "pay through." Paul replied that he thought it would cost twenty-five cents by stage, but that if it should be more the plaintiff must pay it. The plaintiff thereupon paid Paul sixty cents; and Paul gave him a receipt, made by filling out the usual printed form, which, except in certain matter printed in the margin, was, when so filled out, as follows:

UNITED STATES AND CANADA EXPRESS.
*Domestic Bill of Lading.*

$300.                                         EAST BERKSHIRE, Jany 3, 1877.
        Received of Frank Hadd sealed package, said to contain Three Hundred Dollars for J. H. Melendy of Jericho.
☞ To be forwarded to destination at our risk, so far only as our route extends. . . . In no event to be responsible except as forwarders. Paid 60 cts. Thro'

For the Proprietors,                              D. PAUL.

In the margin was printed the names of the various railroads over which the defendant was doing business, together with the

length of each road in miles. The plaintiff was unable to read, and Paul read to him that part of the receipt containing the direction, the description of the package, and the acknowledgment of its receipt, and that part only; and the plaintiff had no knowledge of the contents of the receipt except as it was read to him. Paul made entry of the package in the express books of the defendant, stating the names of the consignor and consignee, the place to which it was bound, the place to which it was to be billed, the sum paid for carriage, and, under the head of remarks, wrote the word "thro'"; and on the following morning the package was billed to Essex Junction, where it arrived on the same day. It was there delivered on the next morning to Howe & Folsom, who owned and operated the stage line from Essex Junction through Jericho to Underhill, and were common carriers and carriers of express matter along their route, to be carried to Jericho, and they gave a receipt for it on the defendant's book, and received from the defendant twenty-five cents, the remainder of the sum paid by the plaintiff after deducting the defendant's charges for carriage to Essex Junction. Howe & Folsom carried the package to Jericho the same morning, and delivered it to Field & Percival, who were their agents to receive and deliver express packages at that place, Howe placing it on the counter of their store, and Percival putting it into a drawer, where they were accustomed to put such packages. On the following day it was discovered that the package had disappeared, and it was never delivered to Melendy. It did not appear that he was notified of its arrival, or that he knew of it till after it was lost. It appeared that it was the custom of the defendant to receive and carry all express packages whereon charges were prepaid, and all on which they were not prepaid, when the packages were worth $3 or more, whether delivered by the consignors, or by other carriers, and whether directed to places on or to places off its route; that if they were prepaid to points beyond its route, the defendant would receive its part of the charges and pay the residue to the connecting carrier, and if not prepaid the defendant would charge its portion for carriage to the connecting carrier, who would collect at the destination; that there was no contract or business arrange-

43

ment between the defendant and Howe & Folsom as to carrying express matter, unless one be inferred from the facts shown, and that neither had any share of or interest in the receipts of the other in such business, but that it was the custom of Howe & Folsom to receive from the defendant such express packages as were directed to points on their route, pay the defendant its charges, if they had not been paid, and receive their charges of the defendant, if the charges had been prepaid, and also in like manner to deliver express packages to the defendant under a like custom as to the payment of charges; and that Field & Percival were not employed by the defendant as its agent to receive or deliver express matter, unless such an agency might be implied from the facts found. The defendant introduced in evidence subject to objection certain of its general rules requiring its agents to let it be understood, when anything was received to be forwarded beyond its route, that its responsibility ended with delivery to the usual conveyance beyond its route, and also giving such agents notice that they were to exercise no discretion, but were to act according to instructions in all cases; and the referee found therefrom that Paul was instructed to follow the defendant's general rules strictly. Neither the plaintiff nor Melendy had any knowledge of those regulations, or of the course of the defendant's business, or of the extent of its route, or of Paul's authority, and they made no inquiry in regard to such regulations. That part of the receipt given by Paul to the plaintiff that gave the defendant's routes, and that part that related to the limitation of risk were objected to, and the receipt was admitted in evidence subject to objection. The referee found that, if on the facts stated the plaintiff was entitled to recover, he should recover $300, with interest thereon from January 6, 1877; and that if he was not entitled to recover, the defendant should recover its cost.

The plaintiff excepted to the report because of the admission of testimony to show that the defendant's route did not extend beyond Essex Junction towards Jericho, to show the existence of the stage line and the custom under which it was operated, to show the defendant's instructions to Paul, and to show what Paul said in contradiction of the receipt about billing the package; and be-

cause of the admission of that part of the receipt to which objection was made.

At the April Term, 1879, the court, ROYCE, J., presiding, rendered judgment, *pro forma,* for the plaintiff for $300, with interest and costs; to which the defendant excepted.

*Noble & Smith* and *C. W. Porter*, for the defendant.

The defendant was not bound to carry through. In the absence of special contract, carriers receiving goods marked to a point beyond their route are responsible as carriers only to the end of their route, and for safe and seasonable delivery to the succeeding carrier in the direction of the transportation. Edwards Bailm. s. 578; 2 Redf. Railw. s. 154; *Farmers & Mechanics' Bank* v. *Champlain Transportation Co.* 23 Vt. 186, 209 ; *Nutting* v. *Connecticut River Railroad Co.* 1 Gray, 502; *Root* v. *Great Western Railroad Co.* 45 N. Y. 524; *Railroad Co.* v. *Manufacturing Co.* 16 Wal. 318, 324. The receipt was not such a contract. *Grace* v. *Adams,* 100 Mass. 505; *Louisville & Nashville Railroad Co.* v. *Brownlee,* 8 Reporter, 144; *Rice* v. *Dwight Manufacturing Co.* 2 Cush. 80. The receipt did not enlarge nor limit the obligation imposed by law. *Nutting* v. *Connecticut River Railroad Co., supra.* But omit that portion that was not read : there was no special contract. *Wash. Manufacturing Co.* v. *Railroad Co.* 113 Mass. 492. Prepayment of the freight did not enlarge the carrier's obligation. *Farmers & Mechanics' Bank* v. *Champlain Transportation Co., supra,* and cases *passim.* The burden of showing a special contract rests on the plaintiff.

But, if there was a special contract, the defendant, by procuring the package to be carried through according to custom, was absolved.

*H. C. Adams* and *D. G. Furman*, for the plaintiff.

The contract was to carry through. *Weed* v. *Saratoga & Schenectady Railroad Co.* 19 Wend. 534; *Cary* v. *Cleaveland & Toledo Railroad Co.* 29 Barb. 36; *Baltimore & Philadelphia Steamboat Co.* v. *Brown,* 54 Pa. St. 77 ; *Illinois Central Railroad Co.* v. *Johnson,* 34 Ill. 389; *Cutts* v. *Brainerd,* 42 Vt. 566, and

numerous other cases. The paper given to the plaintiff by Paul, except as to the part not read, was the exclusive evidence of the contract; but proof that a part of it was not read was admissible. The omission to read to the plaintiff that part of the receipt that limited the defendant's liability was in legal effect a fraud. *King* v. *Woodbridge*, 34 Vt. 565. There is nothing to show assent by the plaintiff to the limitation expressed in the part not read, but the contrary. *Cole* v. *Goodwin*, 19 Wend. 251; *Perry* v. *Thompson,* 98 Mass. 249, and other cases. The cases in which the contract is for carriage through are unlike this. See *Root* v. *Great Western Railroad Co.* 45 N. Y. 524; *Reed* v. *United States Express Co.* 48 N. Y. 462; *Ætna Insurance Co.* v. *Wheeler*, 49 N. Y. 616; *Lamb* v. *Camden & Amboy Railroad Co.* 46 N. Y. 271.

Paul had authority to do what he did, and could bind the defendant to carry through. *Hart* v. *Rensselaer & Saratoga Railroad Co.* 4 Seld. 37. But the defendant having introduced the receipt is estopped by it. *Chouteaux* v. *Leech*, 18 Pa. St. 224, 231.

· The undertaking of an express carrier ordinarily implies actual delivery to the consignee. 2 Redf. Railw. s. 154; *Witbeck* v. *Holland*, 45 N. Y. 13; *American Union Express Co.* v. *Robinson*, 72 Pa. St. 274. The case *Farmers & Mechanics' Bank* v. *Champlain Transportation Co.* 18 Vt. 131, and the case between the same parties, 23 Vt. 186, are distinguishable. There is no proof that the plaintiff knew of the custom in regard to delivery. It was therefore no part of the contract. *Linsley* v. *Lovely*, 26 Vt. 123; *Packard* v. *Earle*, 113 Mass. 280.

The opinion of the court was delivered by

VEAZEY, J. It has been repeatedly decided in the American courts that, *in the absence of special contract*, common carriers, including express companies, receiving parcels marked to a point beyond their own route, and having no special business relations with other carriers, are only responsible as common carriers to the end of their own route, and the safe and seasonable delivery to the succeeding carrier in the direction of the transportation. 2 Redf. Railw. s. 154; Edwards Bailm. s. 578; *Nutting* v. *Connec-*

*ticut River Railroad Co.* 1 Gray, 502; *Root* v. *Great Western Railroad Co.* 45 N. Y. 524; *Railroad Co.* v. *Manufacturing Co.* 16 Wal. 318, 324. In *Morse* v. *Brainerd*, 41 Vt. 550, Chief Justice PIERPOINT, after referring to the English rule, says: " But in this country the rule established in most of the states is, that the company is liable for injuries that occur beyond the termination of their own road, only when they stipulate to deliver the property at a point beyond, and that is the extent to which the decisions in this State have, as yet, gone, and is as far as we are now disposed to go." *Farmers & Mechanics' Bank* v. *Champlain Transportation Co.* 23 Vt. 186, 209.

The plaintiff seeks to recover in this case not by an attack of this rule, but upon the claim that there was a special contract by the defendant to carry the package through and deliver it to the consignee; and that this is evidenced by the receipt given to the plaintiff, and that the defendant is precluded from showing by parol anything to vary this contract.

There is no claim, and upon the facts found by the referee no ground of claim, that the defendant fraudulently misled or attempted to mislead or deceive the plaintiff, when he delivered the package for transportation. This suit is an action on the case against the defendant as a common carrier for its negligence and failure to transport and deliver this package of money according to said special undertaking, with a count in trover. The receipt constituting the alleged contract contained this provision : " To be forwarded to destination at our risk so far only as our route extends. . . . In no event to be responsible except as forwarders." . It also contained the names of the railroads constituting its routes. The point of destination of the package was not on any of its routes. The plaintiff sought before the referee and now seeks to have this receipt, which he claims is a contract in writing, varied by striking out or disregarding the part limiting the liability of the defendant, on the ground that that part was not read to the plaintiff, which fact he proved by parol. He asks to have the receipt construed in the light of his parol evidence, but claims that the explanations of the defendant must be excluded.

But without reference to this inconsistency, we think there is

nothing in this case to take it outside of the well-established rule in this State that simple receipts not under seal are open to explanation by parol evidence; and that the evidence received by the referee as to what took place between the plaintiff and the defendant's agent, Paul, when the money was delivered to the latter, was properly received. The case much relied on by the plaintiff, the *Baltimore & Philadelphia Steamboat Co.* v. *Brown*, 54 Pa. St. 77, is a direct authority to the extent that such a receipt as this may be explained by parol.

In the light of this evidence it seems plain to us that the only undertaking assumed by the defendant or that the plaintiff had a right to understand was assumed, was to transport and deliver the package to the stage line at Essex Junction. Paul told the plaintiff he could bill it only to that place, because the defendant's route only extended to that place. What was said and done about paying for the transportation beyond there fairly indicated that the defendant was to assume nothing beyond that point. There was no business arrangement between the defendant and the proprietors of the stage line in relation to carrying express matter. The custom between them in this respect was not such as to affect either company's liability to patrons for the acts of the other. The case is plainly distinguishable from *Morse* v. *Brainerd*, 41 Vt. 550, where there was a business arrangement entered into between the several roads constituting a continuous line. In 2 Redf. Railw. 107, the author says: " Express companies have generally been held responsible only for the transportation to the end of their own line, and careful delivery to the next company upon the route most direct to the destination of the parcel, with proper directions to the carrier to whom the parcel is successively delivered. And it has been said that where the goods, in such cases, are delivered to the carrier, marked for a particular destination, without any specific instructions in regard to the transportation more than what is to be inferred from the marks on the package, the carrier is only bound to transport and deliver them according to the established usage of the business, whether that be known to the consignee or not."

The plaintiff claims that the omission by Paul to read to the

plaintiff the words in fine print in the receipt, to the effect that the defendant assumed no risk except over its own route, was in legal effect a fraud upon the plaintiff, though it may not have been so intended ; and he cites *King* v. *Woodbridge*, 34 Vt. 565. That case affords no aid in this one. They are dissimilar in facts and questions iuvolved. Moreover, there is no ground for application in this case of the principle discussed by the learned judge in that one, because the obligations of the defendant here were the same as they would have been without that part being in the receipt which Paul omitted to read. It was only the incorporation of such limitation of liability as would have existed without it. The omission to read it was simply the omission to read that which was of no consequence in the receipt so far as it affected the obligations or rights of the parties. But if this were otherwise, the plaintiff was not deceived or injured by such omission, because Paul told the plaintiff that the defendant's route only extended to Essex Junction, and that he could bill the package only to that point. We think the plaintiff was fairly informed of what the defendant undertook to do.

*Judgment reversed, and judgment for the defendant to recover its costs.*