## PACKARD et al. vs. TAYLOR, CLEVELAND &, Co.

1. PARTIES: *Joint owners. of a vessel: Several liability.*
   By the Code, any or all joint owners of a vessel may be sued on any contract made in respect to it.

2. COMMON CARRIERS: *Their liability.*
   The carrier's obligation to keep and carry goods safely, is founded on the custom of the realm, at common law, and is independent of contract; being imposed by law for the protection of the owner, and founded upon public policy and commercial necessity; and in the absence of any contract reasonably restricting or modifying the liability implied by law, the carrier is an insurer—liable, not only for negligence, but even for inevitable accident not occasioned by the act of God. And if an unseaworthy vessel is sunk by the act of God—a violent wind—that would not have sunk a seaworthy vessel, the owners are liable to the shippers for the loss they sustain.

3. SAME: *Connecting carriers' liability.*
   Where goods are shipped to be transferred by successive carriers, the carrier in whose possession they are when destroyed or injured, is liable as such, to the owner or consignee for the loss.

APPEAL from *Jefferson* Circuit Court.
Hon. J. A. WILLIAMS, Circuit Judge.
*M. L. Jones,* for appellants.
*McCain, contra.*

EAKIN, J.    Taylor, Cleveland & Co., merchants at Pine

Bluff, brought this action at law against appellants, Packard & Hammett, owners of the steamboat "Lizzie," to charge them for damages to goods which had been delivered to said steamer at Little Rock, to be transported to Pine Bluff, and which had been injured by the sinking of the steamer in the Arkansas river, before her departure from the wharf. Bills of particulars, describing the goods, were filed, and the damage sustained, sufficiently proved.

The defenses set up by the answer may be reduced to three:

1. That there was a non-joinder of proper parties defendant, inasmuch as a third party not sued was a third owner of the vessel. This may be disposed of, at once, in passing.

2. PARTIES: Joint owners of a vessel: Several liability.

Although independently of any statute, it was necessary to sue all the joint owners of a vessel on any contract made respecting it, and a non-joinder was matter in abatement, yet this has been positively altered by the Code. See *Gantt's Digest, secs. 4479 and 4480.* Any or all may now be sued.

2. That defendants made no contract with plaintiffs for the carriage of the goods, but received them from the St. Louis and Iron Mountain Railroad company, to be carried in its behalf, and to which, alone, they are responsible.

3. That defendants were guilty of no negligence, nor misconduct, but that the accident happened solely from the act of God, and the perils of the river.

Upon trial by a jury, there was a verdict for $750 damages, and judgment in plaintiff's favor accordingly. There was a motion for a new trial, which was overruled. A bill[1] of exceptions was taken, and an appeal granted.

It appears from the record, that the plaintiffs below had purchased in Boston and New York, bills of goods which

had been consigned to said railroad at St. Louis. They were received there, by the railroad company, for transportation to the owners at Pine Bluff, a point upon the Arkansas river below Little Rock, at which latter place the railroad crosses the river. No bill of lading was given. The railroad company had a contract with the steamer "Lizzie," through her owners, who were common carriers by water, to take down all goods consigned to Pine Bluff, dividing the freight in a certain proportion. Upon their arrival at Little Rock the goods were placed in the charge of a transfer company which delivered them to the clerk of the "Lizzie," on the wharf. The vessel, on her last trip, had been injured by a snag. She was brought to the wharf for repairs. A dock had been run under her, and pumped out so far as to elevate the injured portion of the hull, and the carpenter had cut two holes in her bottom to be repaired with new timber, one about four feet by twelve inches, and the other about three feet by ten inches. Whilst the boat was thus on the dock the goods were taken aboard. The weather was bad. It had been raining, and there was some wind. The boat was lying with the forward portion upon the dock, and the stern held to the bank by a slack chain. Whilst in that position, by some accident the dock slipped out, and the vessel sank to the bottom, damaging the goods. The immediate cause of the accident is not certainly known, but the proof tends to show that about that time a small whirl of wind passed across the river, drove her stern against the bank, and broke the chain in the rebound, thus shaking her from the dock.

There was proof that it was necessary to put the goods on board to protect them from rain, that the weight of them was calculated to steady the dock, and that it was the practice to load freight, sometimes, on vessels whilst upon

dock undergoing repairs. These are the material facts affecting this case. The amount of the damage was properly proved by direct testimony.

The instructions given on plaintiff's motion, against defendant's objection, are the following:

1. Where goods are shipped to be transported by successive carriers, the carrier in whose possession they are when destroyed, or injured, is liable as such to the owner or, consignee for the loss; and further, in effect, that—

3. The burden of proof is on the carrier to exempt himself from damages.

4. Defendants are bound to show that the injury resulted from the act of God.

6. If the goods were damaged by any defect in the ves sel which rendered her unseaworthy, the defendants are liable.

7. The jury may find interest at six per cent. per annum, on damages.

8. Defendants may be sued as part owners, although there were other part owners and partners.

9. Any act or omission of the carrier, or anything which may befall his boat, and occasion damage to property, is regarded by the law as negligence, unless it is the act of God, or the public enemies.

10. If the steamboat received goods for carriage at Little Rock, marked to plaintiffs, and belonging to them, the law would imply a contract to carry and deliver them.

To which the court, of its own motion, and likewise against defendant's objection, added this: "Common carriers are not excused from liability by accidents caused by the action of the elements (usually denominated the acts of God), which would not affect a perfectly seaworthy vessel."

For defendants, the court instructed:

1.    That if the accident to the "Lizzie" was the result of any such act of God as lightning, storms, tempests, whirlwinds, etc., and was the immediate cause of the damage to the goods, the defendants are not liable.

5–6.    They are not liable if the goods were damaged from no negligence on their part, but by reason of an unforeseen and unavoidable accident, occasioned by a sudden gust of wind; provided, the officers used the usual and ordinary care and prudence in regard thereto.

9.    Plaintiffs must prove that defendants are common carriers, and received the goods as such, under contract, express or implied, with plaintiffs; and that they were damaged by the negligence or carelessness of defendants as such carriers.

10.  · If the jury found that the railroad received the goods at St. Louis to be transported to Pine Bluff, and it was understood that the goods were to be carried from Little Rock to Pine Bluff on the steambeat "Lizzie" under the contract made with the consignee or shipper; then, the said steamer "Lizzie" became a part of the continuous line of carriers from St. Louis.

And the court refused to instruct for defendants:

2.    That if the boat was on the dock for repairs, securely and sufficiently fastened· for the purpose, and it was customary to place goods or freight on steamboats whilst undergoing repairs, and upon docks, for ballast, and that the boat, whilst in this condition and so ballasted, was torn from her fastenings and made to take water and sink, by a sudden and violent gust of wind, whereby damage ensued to the goods, they will find for defendants.

3.    If they believe that there was another joint owner of the boat, so registered and held out to· the world, the

Packard et al. vs. Taylor, Cleveland & Co.

plaintiffs, having failed to make him a party, could not recover in this action, and to find for defendants.

4.   If they believed that there was a contract for carry-ing freights from St. Louis to Pine Bluff, between the rail-road on one part, and the boat-owners on the other, by which the former was to give through bills of lading, and the steamer was to carry goods under that contract, and these goods were so being carried, the defendants are not liable in°this action.

It will be seen that a portion of the objections to the instructions given for plaintiffs, and some of the instruc-tions asked by defendants and refused by the court, are based upon this assumed principle, that if the defendants were acting only under a contract with the railroad to carry, for the corporation, freights which it had under-taken to deliver at Pine Bluff, they could only be held to answer at the suit of the railroad, and not of the plaintiffs

2. COMMON CARRIERS. Their lia-bility.

But it must not be lost sight of, that defendants were, themselves, common carriers between Little Rock and Pine Bluff, carrying for the railroad only as a part of their general business.   The contract had only the effect of a contract between common carriers, for increase of custom to the steamboat line, securing it, in competition with other carriers upon the same route.   It did not relieve the steamboat owners from any of the general responsibilities of common carriers with regard to goods so transferred to them for carriage by the railroad.   They were not the pri-vate agents of the railroad company, but were carrying on a general business, for the benefit of any one who might employ them.   They are bound by the same obligations and to the same persons which bind successive common carriers, receiving goods from each other and transmitting them along the route to the point of ultimate destination.

There were no bills of lading in this case, restricting or defining the several liabilities of the railroad and the steamer "Lizzie." The general law must govern.

The carrier's obligation to keep and carry safely is founded on the custom of the realm, at common law ; and is independent of contract, being imposed by law for the protection of the owner, and founded upon public policy and commercial necessity. (*Chitty on Carriers, 34, 35.*) There may be a special contract, also, not indeed superseding that implied by law, which still underlies the other, but restricting or modifying it in some · particulars, in a manner which the courts may not consider unreasonable, or subversive of the general policy. (*Ib.*) But in the absence of any such contract, the carrier is an insurer—liable not only for negligence, but even for inevitable accident, not occasioned by act of God. In this case there is no question of public enemies.

3. ———: We are cited to the cases of *Bank of Kentucky v. Adams Express Co., 3 Otto, 174,* and *Newell v. Smith, 49 Vt., 255,* as authority to sustain the position that the contract of affreightment being with the railroad, the defendants can not be sued upon it. The first was a suit against an express company to recover the value of a package of money which defendant had received, to be delivered to plaintiff, at Louisville. The express company had employed the services of a railroad to transport its packages, which were accompanied by and remained under the control of its messenger. An accident happened to the road, by which the car was burned and the package destroyed. The defense set up was, that the express company having contracted to be held only to the liability of a common bailee, for hire, in case of loss by fire, was not answerable for the negligence of the employees of the railroad, over which it

had no control; and so it was held by the circuit court. This was reversed, on appeal to the supreme court of the United States, the latter tribunal holding that the railroad company was the agent of the express company, and that the latter must answer for the negligence of the former. The question of the liability of the railroad company to the consignees of the package would be analogous to this, but it did not arise. The court, however, *arguendo*, took this liability for granted, upon the authority of *The New Jersey Steam Navigation Co. v. Merchants' Bank, 6 Howard, 344*, and say: " Granting that the plaintiffs can sue the railroad company for the loss of the packages through its fault, their right comes through their contract *between it and defendants*. They must claim through that. Had the packages been delivered to the charge of the railroad company, without any stipulation for exemption from the ordinary liability of carriers, it would have been an insurer *both to the express company and to the plaintiffs.*" *3 Otto, p. 184.*

In the case here before us, the goods were taken by the St. Louis, Iron Mountain and Southern Railway company, without any express contract, to be carried to Pine Bluff; and were delivered to the defendants at Little Rock, as common carriers, to be transported to their destination, without any stipulation for exemption from the ordinary liability of carriers. According to the principle above announced, the owners of the " Lizzie " would thus become insurers, both to the St. Louis, Iron Mountain and Southern Railway company, and to the plaintiffs. It is true, however, that in *3 Otto* the case is stated hypothetically.

The case in *49 Vermont, supra*, goes only to fix the liabilities of a carrier who expressly contracts to deliver goods at a destination beyond the terminus of his own

road, for the negligence of any connecting road in the line of transportation.

This court has held that this liability for loss by a connecting carrier may be repelled by express stipulation. (*Taylor, Cleveland & Co. v. Little Rock, M. R. and T. Railroad Co., 32 Ark., 393.*) But neither the latter case nor the case from Vermont conflicts with the principle announced in *6 Howard, supra,* that the consignee of goods may maintain an action against the carrier in whose hands the loss happens, through the rights of the carrier originally bound.

Although the English courts have adopted the principle that a carrier who receives goods to be conveyed to a point beyond the terminus of his own route, is liable for losses whilst in the hands of connecting carriers, and have even held that in such cases the subsequent carrier can not be held liable by the owner, yet the American courts have taken a different view. See the question discussed and authorities cited in *Redfield on Railways, sec. 162 and notes.*

I have not met with any American case absolving the connecting carrier from liability to the consignee, although the contract may have been made with a preceding one on the route.

There are some cases which hold the connecting carriers entitled to all exemptions and qualifications which the original carrier had secured for itself by special contract, thus limiting its common law liability. Such was the case of *Manhattan Oil Co. v. Camden & Amboy R. R., 52 Barbour, 72,* but they go no further. Even in England the principle seems confined to cases where the first company has expressly contracted to deliver at the point of destination; and some learned judges reject it altogether. (*Redfield, supra*). Justice REDFIELD, in the case of *Farmers' and Me-*

*chanics' Bank v. Champlain Trans. Co., 23 Vt., 209*, considered that this was pushing the law of carriers to an absurd extent; and considered the better and more just and rational rule to be, that in the absence of a special contract, each carrier is only liable for the extent of his own route, and the safe storage and delivery to the next carrier. And to the same purport are a vast concourse of American decisions.

The court did not err in its instructions, or refusals, on this point.

All the other instructions are either sustained, or rendered harmless to defendants, by the plain and palpable showing, from the evidence, that they received the goods without having at hand any seaworthy vessel, or place to store the goods out of the weather. A steamer with two great holes in the hull, which could not live five minutes on the calmest water, is, although supported on a dock, held under her by a chain, not such a vessel as it was the duty of defendants to furnish. There is no proof of any act of God which would have affected any vessel which would have floated at all. The defendants, in putting goods upon her, took all the risks, which were not lessened by any example of other carriers in other ports. They took risks also. It might have held the boat more steadily on the dock to load the freight upon her, but the owners of the goods were not interested in repairing the boat, and it was a perversion of them to use them for such purposes. It caused their loss. The act of God which shook the dock from under the vessel was not the immediate cause of the damages. It was the holes in the vessel, admitting torrents of water as soon as it touched the surface. The defendants should not have received the goods, or should have stored or protected them until the steamer could be made sea-

worthy.   In carrying them on board a vessel in that con-
dition, they made their safety depend on the strength of a
chain, or the want of agitation in the air.   They were not
bound to receive the goods until they were ready to engage
in their transit, and ought not to have done so without
means of keeping them safely.   It is the first duty of a
carrier by water to provide and have ready, boats suitable
for the purpose.

Under no proper instructions could the jury have found
a verdict, upon the evidence in this case, for defendants.

It is useless, therefore, to inquire critically concerning
the instructions.   Suffice it to say they were, on the whole,
favorable to defendants; and that, in any view, the verdict
was not only right, but so inevitable that any other would
be set aside.

There are other points made on the motion for a new
trial, which we have duly considered, but deem it unneces-
sary to discuss, as they would not affect the result.

Affirm.