Opinion by
Willson, J.
§ 33. Baggage; meaning of. By “baggage-” is understood such articles of personal convenience or necessity as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the trunk of a passenger, but which are not, however, designed for such use, but for other purposes, such as sale and the like. [W. & W. Con. Rep. §§ 614, 1254, 1255; Hutch, on Carriers, §§ 678, 685; Thomp. on Carriers, 510.] The articles claimed as baggage in this case consisted of one sample liquid cooler, one beer-faucet, one wrench and one lemon squeezer, which were samples being carried by plaintiff in his trunk, for the purpose of effecting sales. Held, that these articles were not “baggage.”
§ 3 4. Estoppel; receiving articles as baggage which are not baggage. It is a reasonable and correct doctrine that where a railroad company, through its ticket or baggage agent, receives articles for transportation as baggage, knowing at the time that such articles are not properly baggage, the company will be responsible therefor as a common carrier, and will be estopped from denying that the articles were baggage, at least to the extent that the agent had notice of the character of such articles. [But *36 ler v. Hudson River R’y, 3 E. D. Smith, 571; Redfield on Carriers, § 78, and notes; 2 Redfield on Railways, p. 46, and notes; Hutch, on Carriers, § 685.] In this case, the evidence shows that the trunk and its contents were safely transported by the appellant to Longview, the point of destination, and placed in the depot subject to the order of appellee; that appellee, soon after the arrival thereof, called at the depot with his check for the trunk, and informed the agent in charge that he contemplated traveling on the company’s road again in a day or so, and thereupon the agent told him he could leave the trunk in the depot until he got ready to go on the train, and that he could retain the baggage check until then. It was not proved, nor is it pretended, that the agent at Longview had any knowledge of the contents of the trank at the time he consented for it to remain in the depot, or at any other time. It is contended by appellee that as this agent allowed the trank to remain in the depot upon the prospect of appellee again becoming a passenger upon appellant’s road, this would x’ender the company liable for the trank and its contents, as baggage. As a general rule, this proposition is correct. [2 Red. on R’ys, 39, 40; Red. on Carriers,.§ 73.] But does this rule apply in this case ? The articles in the trank were not baggage; the agent at Longview had no knowledge of the character of the articles; he allowed the trunk to remain in the depot believing it to be baggage, and it was there destroyed by fire. These being the facts, the liability of the company for the loss of the trunk and contents was that of a warehouseman, and not that of a common carrier. If the agent at Longview, having knowledge that'the articles in the trunk were not baggage, still pex-mitted them to x’emain in the depot as baggage, the company would cleai’ly have been liable thex-efor as a common carriex\ The trank had reached its destination under the eontx-act of cax’riage. That contract had been fully performed on the part of the company, and the liability of the company as a common carrier had ceased. Any *37 further liability as a common carrier with respect to the trunk and its contents could only be created by a new contract, and, in making any such contract, neither the agent at Longview, nor the company, would be chargeable with the knowledge of the contents of the trunk, which was imparted to the agent who received the same for shipment.
§ 35. Common carrier; liability of; rules as to bagagge; duty of carrier and of owner of baggage. A carrier’s liability for goods attaches from the commencement of the trip or voyage, and continues until the goods are delivered to the consignee at the point of destination. [R. S', art. 281.'] With reference to the delivery of the goods, this article must be construed to mean that if the consignee, within a reasonable time, does not demand the goods, the carrier’s liability as such will cease. In the case of baggage, the rule seems to be that the responsibility as carrier continues until the owner has had reasonable time and opportunity to take it away. After that the responsibility as carrier ceases, and the carrier becomes a mere warehouseman, and liable as such only; “It is the duty of a railway company, in regard to the baggage of a passenger which has reached its destination, to have the baggage ready for delivery upon the platform at the usual place of delivery until the owner, in the exercise of due diligence, can call for and receive it; and it is the owner’s duty to call for and remove it within a reasonable time. If he does not so call for and receive it, it is the company’s duty to put it into their baggage-room and keep it for him, being liable only as warehouseman. And the reasonable time within which the owner must call for it is directly upon its arrival, making reasonable allowance for delay caused by the crowded state of the depot at that time, and the lateness of the hour makes no difference if the baggage be put upon the platform.” [Quimit v. Henshaw, 35 Vt. 605; Hutch. on Carriers, §§ 707-712; Edwards on Bailm. § 227; Story on Bailm. § 213; Red. on Carriers, § 73.]
*38 October 30, 1883.
§ 36. Warehouseman; liability of'; negligence; burden of proof. Where goods in the care of a warehouseman are destroyed by fire, and this fact is shown, the warehouseman is not liable for the loss of the goods unless it be proved that the loss was occasioned by the neglect of the warehouseman, his agents, employees or servants, and the burden of proving such negligence devolves upon the plaintiff. [W. & W. Con. Rep. §§ 118, 412, 414.]
Reversed and remanded.